### SOUTH CAROLINA LOAN & TRUST CO. v. McPHERSON.

1. Findings of fact by the master, concurred in by the Circuit Judge, approved.
2. A mortgage recorded after the time prescribed by the act of 1876 (16 *Stat.,* 92 ; *Gen. Stat.,* § 1776) has lien from the date of recording, and consequently takes priority over the claims of all creditors who have not before that time established a lien. *King* v. *Fraser,* 23 *S. C.,* 543, approved.
3. A mortgage taken in good faith but not recorded for nineteen months, and then put upon record by the mortgagee within two days before a general assignment by the mortgagor for the benefit of his creditors, is not *made* within ninety days before such assignment, and therefore is not avoided by section 2015 of the General Statutes. And being a lien, it is not affected by the assignor declaring that the property assigned is subject to the mortgage.

Before WALLACE, J., Charleston, March, 1886.

This was an action by the South Carolina Loan and Trust Company against David McPherson and others. The opinion states the case.

*Mr. John Wingate,* for appellant.

*Messrs. Hayne & Ficken,* contra.

April 19, 1887. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The "Case" prepared for this appeal and the accompanying papers, including the evidence reported, &c., are voluminous and elaborate, and give a full history of the proceeding below, but much of it is outside of the questions presented for our adjudication. It will not be necessary, therefore, to make a statement here of all the facts of the case. The questions really involved are few, and nothing more of the facts need be detailed than such as said questions may require. They are, briefly, as follows :

The defendants, McPherson and Kinloch, were mercantile partners under the name of D. McPherson & Co. The firm seems to have been considerably in debt, as was also D. McPherson individually, and on March 27, 1878, a mortgage was found recorded in the proper office for Charleston County, and also on         day         A. D. 1878, in Georgetown County, purporting to have been executed by the defendant, D. McPherson, to the defendant, Francis J. Pelzer, to secure the payment of a bond in the penal sum of $22,000, said mortgage covering certain real estate located in the city of Charleston and in Georgetown County, a plantation on the south side of Wadmalaw creek, and also a plantation in Colleton County. On September 27, 1883, there was recorded in the office of the register for Charleston County a mortgage dated February 15, 1882, made by D. McPherson to the defendant, Julia C. Kinloch, to secure a bond in the penal sum of $25,000, conditioned to pay $12,500, covering the real estate in Charleston and also the Indian Hill plantation in Georgetown County. On September 29, 1883, the said David McPherson, for himself and also for his firm, executed and delivered to the defendant, Archibald S. Johnston, an assignment purporting to convey all the real estate and personal property of the said David McPherson and of his firm to said Johnston, for the benefit of the creditors of the said David and of the firm. This assignment embraced the real estate described in the mortgages above, and also other real estate and personal property, the assigned property being declared therein to be *subject to said*

*mortgages.* Mr. Johnston accepted the trust, and soon there-after a meeting of the creditors was called, at which meeting the defendant, John B. Steele, was appointed agent, October 9, 1883.

On November 3, 1883, the plaintiff, claiming to be a large creditor of D. McPherson & Co., and also of David McPherson, instituted the action below, alleging that it became a creditor of David McPherson and of his firm, for money lent between the 15th day of February, 1882, the date of the mortgage to Julia C. Kinloch, and the time when said mortgage was recorded, September 27, 1883, without notice of said mortgage; that the defendant David, by subjecting the assignment to the mortgages, endeavored to give a preference to the defendant, Julia C. Kinloch, over the other creditors, &c. Wherefore the plaintiff demanded, among other demands, judgment on its own behalf and on behalf of the other creditors of both David McPherson and of David McPherson & Co., that the debt of the defendant, Pelzer, be ascertained; that certain real estate embraced in the mortgage to him claimed by the plaintiff to belong to David McPherson individually be sold and the proceeds thereof be applied to the debt of the said Pelzer; that so far as Pelzer's mortgage embraced partnership property, it be decreed void and of none effect; that the mortgage to Julia C. Kinloch be decreed void and of none effect; that creditors be called in, the property be sold, the proceeds of the individual property of David McPher-son, after paying the mortgage of defendant, Pelzer, with the proceeds of the partnership property, be marshalled and applied *pro rata*, after costs and expenses to the claims of the creditors of the said defendant, David McPherson, and of David McPher-son & Co., &c.

After answers put in, the case was referred to the master, the real matter of contest in its further progress being the mortgage of Julia C. Kinloch, which was assailed before the master, as not being *bona fide*, as in violation of sections 2015 and 2014 of General Statutes (assignment act), and as void to the plaintiff under the recording law, said mortgage not having been recorded within the legal time, and the debt of the plaintiff having been contracted before it was recorded and without notice of its execution. The master established the debt of Mrs. Kinloch against

the firm at $10,175.38, and that the bond and mortgage of David McPherson in question had been given as collateral security to secure the said debt of said firm. He, however, held as matter of law that said mortgage did not take rank with a valid lien against the plaintiff from the date of its record, but that plaintiff's claim having been contracted between the date of execution and the recording, which was not within the legal time for recording, had priority, or rather that said mortgage was void as to the plaintiff.

His honor, Judge Wallace, heard this report and modified it by reversing the master's conclusions on the "matters of law" to which Mrs. Kinloch had excepted, holding, under the case of *King* v. *Fraser et al.* (23 *S. C.*, 543), which had just been announced, that Mrs. Kinloch's mortgage took rank with a valid lien from the day of its record, to wit, September 27, 1883, and that the bond secured thereby should be paid out of the funds derived from the sale of said premises in preference to the claims of the other creditors of D. McPherson & Co., who had not at the date of the recording of said mortgage any lien on said premises, and he confirmed the report as thus modified, taking occasion to say, in regard to the suggestion of fraud in connection with the mortgage of Mrs. Kinloch, that, "the whole transaction was marked with perfect honesty, and that the money lent by her was used for the business purposes of the copartnership of which her son was a member, and that the security given for its repayment was that to which she was entitled."

The appeal claims that the mortgage of Mrs. Kinloch should have been held void as to the plaintiff upon three grounds : 1st. The debt of Mrs. Kinloch was a secret debt, and that the mortgage was purposely not recorded and was kept secret, to sustain which would operate as a fraud on the plaintiff. 2nd. That it being recorded out of time, and after plaintiff's claim had been contracted, it could not be enforced to his prejudice. And 3rd. The execution of the assignment on September 29, 1883, in which the property therein described was conveyed to the assignee *subject to the mortgages*, was an attempt to give a preference to Mrs. Kinloch, in violation of section 2014 of General Statutes.

The first ground involves largely a question of fact, to wit,

the *bona fides* of the claim and mortgage of Mrs. Kinloch. Upon this question the master and the Circuit Judge concurred in finding that said claim and mortgage were free from suspicion even ; at least the master established the claim without an intimation of wrong, and the Circuit Judge used the strong language quoted above, that instead of there being fraud, "the whole transaction was marked by perfect honesty"—"and the money claimed had been fairly lent and used by the copartnership." We have not found anything in the testimony which would warrant us to disturb this finding in the least.

As to the second ground, we think the case of *King* v. *Fraser et al.* is conclusive. That case decided the very question here, to wit, that a mortgage recorded after the time prescribed by the act has lien from the date of recording, and consequently takes priority over the claims of all creditors who have not before that time established a lien. This was a clear and distinct proposition of law held by the court upon the construction of the proviso to the act of 1876, which allowed mortgages to be recorded after the forty days. It was held after mature deliberation, the question having been fully and elaborately discussed by the counsel engaged in the appeal which involved it. Notwithstanding the ingenious effort of the appellants' counsel here to that end, we cannot see any difference between that case and the one at bar, either as to the facts, the situation of the parties, the creditors, or otherwise, affecting the question or preventing the application of the principle there, to this. And we see no necessity to go further in sustaining the Circuit Judge than to refer to *King* v. *Fraser et al.*

3d. It is claimed that D. McPherson & Co. having subjected the assigned property to the mortgage of Mrs. Kinloch, that this was a preference, in violation of section 2014 of the General Statutes—a part of the assignment act. In the first place, unless this mortgage already had a preference, subjecting the assigned property to it, the assignment could not have given a preference simply by recognizing its existence. And if it had a preference already, mentioning it in the assignment had no effect whatever beyond the recognition of its existence. At all events, if it had a preference according to its legal lien (and the Circuit

Judge has so held, in which we have sustained him above), certainly the recognition of its existence in the assignment could not destroy the rights of the mortgagee thereunder, whatever may have been the intent of the assignors. It would be an anomalous doctrine to hold that an unimpeached mortgage under which a mortgagee has secured important rights, and as to the *bona fides* of which there is not even a suspicion, can be vacated by the mortgagor afterwards making an assignment, and stating in said assignment that the property assigned, so far as it is embraced in said mortgage, is subject thereto. The construction of the assignment act in the case of *Wilks* v. *Walker* (22 *S. C.*, 108) has enlarged to a considerable extent the protection of creditors beyond what existed before the passage of the act, and has insured to them an equal and just distribution of the assets of their insolvent debtors; but it cannot be claimed that that act shall be used as an instrument to perpetrate the injustice of taking from a vigilant creditor the rights which he has secured, and which the court has found, were secured fairly, justly, without fraud, and fully in accordance with established law, for no other reason than that the debtor, in making an assignment afterwards, recognized the fact that said creditor had already secured a lien on a portion of the property assigned.

It is, however, claimed that the effect of the decision of *King* v. *Fraser et al.* was that a mortgage recorded out of time under the proviso of the act of 1876 was, in substance, the execution of a new mortgage at that time, and in the case at bar the recording being within ninety days before the assignment, it is void under section 2015, General Statutes. This section does prohibit any pledge, &c., within ninety days before a general assignment for the benefit of creditors, and declares such pledge, &c., to be void, provided the creditor preferred has reasonable cause to believe the debtor to be insolvent, and that the pledge, &c., was given and made in fraud of the provisions of the act. Provided, further, "that nothing, however, in this section shall be construed to invalidate any loan of actual value, or the security therefor, made in good faith, upon security taken in good faith on the occasion of the making of such loan, or any security *bona fide* made for advances." While such pledges, preferences, &c., are pro-

hibited, yet to whose act does the inhibition apply ?    To that of the debtor, and to no one else.    He is the only person that could make a pledge, &c., and, of course, he is the party restrained from doing so.

But without discussing this question further, we propose to adopt the reasoning of Mr. Justice Strong, of the Supreme Court (U. S.), in the case of *Clarke* v. *Iselin*, 21 *Wall.*, 374, which was a case arising under the bankrupt act, the 35th section of which was very similar to section 2015, *supra*, the only difference being that the time of the preference declared under section 35 of the bankrupt act was four months, while in section 2015 it is ninety days.    Mr. Justice Strong said : "These things must concur" (to wit, the debtor must have procured the judgment and attachment of his property ; it must have been procured within the four months prior to the filing of the petition ; he must have been insolvent, &c., and the creditor must have had reasonable cause to believe that he was insolvent, and that the judgment was given in fraud of the bankrupt act—the very acts mentioned in section 2015).    "They must concur, not only in fact, but in time also.    *    *    *    In fine, there must be a guilty collusion to constitute the fraudulent preference condemned by the statute.    *    *    *    Now, in the case where a creditor holding a confession of judgment perfectly lawful when it was given, causes the judgment to be entered of record, how can it be said the debtor procures the entry at the time it was made ?    It is true, the judgment is entered by virtue of an authority given when the confession was signed.    That may have been years before, or if not, it may have been when the debtor was perfectly solvent.    But no consent is given when the entry is made, when the confession becomes an actual judgment, and when the preference, if it be a preference, is obtained.

"The debtor has nothing to do with the entry.    As to that, he is entirely passive.    Ordinarily, he knows nothing of it, and he could not prevent it if he would.    It is impossible, therefore, to maintain that such a judgment is obtained by him when his confession is placed on record.    Such an assertion, if made, must rest on a mere fiction.    *    *    *    That years before the debtor may have given a warrant of attorney to confess a judgment, or

by a written confession, as in this case, have put it in the power of his creditor to cause a judgment to be entered without his knowledge or subsequent assent, is wholly impertinent to the inquiry, whether he had in view or intended an unlawful preference at a later time, at the time when the creditor sees fit to cause the judgment to be entered. For, we repeat, it is a fraudulent intent, existing in the mind of the debtor at this later time, which the act of congress has in view. The preference must be accompanied by a fraudulent intent, and it is that intent that taints the transaction. Without it, the judgment and execution are not void."

This reasoning appears to us to be absolutely conclusive, and strike from it the word judgment and insert mortgage, and in the place of bankrupt act insert section 2015, General Statutes, and we have the case at bar. Mr. Justice Swayne, of the Supreme Court (U. S.), in another case, was equally as strong. *Burnhisel* v. *Firman*, 22 *Wall.*, 177. These cases, true, are not authority in the sense that they should control us on the question here. But the question is the same in substance, the reasoning clear and conclusive, and the conclusion is inevitable. We do not think that the recording of Mrs. Kinloch's mortgage within ninety days of the assignment rendered it void under the assignment act.

The case at bar, in its inception and progress below, involved several other interests and questions besides those discussed herein, but the only matters brought before us in the appeal were those mentioned, and to avoid confusion, and to prevent this opinion from being unnecessarily encumbered with impertinent facts, we have confined ourselves to such only as seemed material to the questions raised.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McGOWAN concurred.

MR. JUSTICE McIVER concurred in a separate opinion as follows:

It seems to me that the case of *King* v. *Fraser* (23 *S. C.*, 543) is conclusive as to the main point raised by this appeal; for I do

not think that the circumstances relied on by appellant, as distinguishing that case from this, are sufficient for that purpose. It is true that I did not then, and do not now, assent to the correctness of the construction placed upon the recording act of 1876 by the majority of the court in that case, but I do fully recognize it as a binding authority; for it is an authoritative construction of a statute by the tribunal invested with power for that purpose. It is the law of the land, and must and should be respected accordingly.

I have had very grave doubt as to whether the mortgage in favor of Mrs. Kinloch should not be declared void under the provisions of section 2015 of the General Statutes, inasmuch as it did not become a lien until it was recorded, two days before the execution of the assignment by the mortgagor. But as that section seems to prohibit only acts *done by the insolvent debtor* within ninety days before the execution of his assignment, and as the act which gave this mortgage a lien as against other creditors—putting the mortgage on record—was not only not done, or even suggested or procured, and, in fact, could not have been prevented by the mortgagor, it cannot with propriety be said that *the insolvent debtor* has, within ninety days before the execution of his assignment, made a mortgage of his property for the purpose of giving a preference to one of his creditors, for the only act which he did—the execution of the mortgage—was done long before the ninety days commenced to run.

It is true that the insolvent debtor, by giving the mortgage, placed it in the power of the mortgagee to make such mortgage a lien as against other creditors at any time he might see fit to do so, and that this power was, in this case, exercised within the ninety days, from which it has been argued that this was a continuing power from the mortgagor to the mortgagee, and hence that the mortgagor must be regarded as intentionally participating in the act of recording the mortgage, which was done within the ninety days. But this involves the idea that the mortgagor could, at any time before its exercise, withdraw this power, which he certainly could not do, for one can scarcely be regarded as intentionally participating in an act which he could not prevent if he wished to do so, and to the efficacy of which his consent, at

the time, would add nothing whatever. If McPherson had, at the date of the mortgage, given to Mrs Kinloch a note, he would thereby have placed it in her power to have more readily obtained a lien by reducing the note to judgment than if her claim had remained in an unliquidated form ; and if she had reduced such note to judgment within the ninety days, the lien thereby acquired would certainly not be void under section 2015, although the act of giving the note might be said to have facilitated the acquisition of the lien.   So here, when the mortgage was given, McPherson thereby afforded Mrs. Kinloch the means of easily acquiring a lien whenever she might afterwards see fit to do so ; but her act in doing so was entirely her own, over which McPherson neither did nor could have any control, just as if she had taken a note instead of a mortgage, which she afterwards, and within the ninety days, reduced to judgment, and thereby acquired a lien.

Under a provision in the bankrupt act, in all respects similar to section 2015 of our General Statutes, except as to the period—four months instead of ninety days—within which preferences are forbidden, the Supreme Court of the United States have held, in the case of *Wilson* v. *City Bank* (17 *Wall.*, 473), that the lien of a judgment, even though recovered by default upon a valid debt to which the debtor has no defence within the four months, is not void under the provisions of the act, upon the ground that it cannot be regarded as an act to which the debtor has contributed, and something more than mere passive non-resistance on his part would be necessary to make it void under the provisions of the thirty-fifth section of the bankrupt act.   This case, as well as those cited by the Chief Justice, more directly in point, it seems to me, furnish conclusive authority in favor of the conclusion reached, in which I concur.

Judgment affirmed.