Bonns v. Carter.

SAMUEL H. BONNS, PLAINTIFF IN ERROR, v. WILLIAM
H. CARTER, DEFENDANT IN ERROR.

Assignment for Creditors.    Rule laid down in *Bonns v. Carter*,
20 Neb., 566, adhered to.

This was a rehearing of case reported 20 Neb., 566. The
former judgment was by a majority of the court (MAX-
WELL, CH. J., and COBB, J.), adhered to. REESE, J.,
dissented, and filed the opinion which follows, MAXWELL,
CH. J., commenting thereupon, and expressing the views
of the majority of the court on the law of the case. The
cases cited by counsel are commented upon in the opinion
of JUDGE REESE.

*D. A. Holmes*, for plaintiff in error.

*E. F. Gray*, for defendant in error.

DISSENTING OPINION OF REESE, J.

This cause was decided at the July, 1886, term of this
court, and is reported in 20 Neb., 566. On an applica-
tion for a rehearing being granted, the cause was reargued
and submitted, a majority of the court adhering to the de-
cision first made, but declining to write an opinion. To

this holding I cannot agree, and will here state my reasons therefor.

The principal question involved, and which I shall notice, is, the holding that the execution of the mortgage by B. C. Hamilton to Samuel H. Bonns was, in effect, an assignment for the benefit of creditors, and, not being made in accordance with the statute governing assignments, was void.

The discussion of this question involves the correctness of the charge given to the jury by the trial court, to the effect that the mortgage was an assignment for the benefit of creditors and was void. This instruction being set out in the original opinion, need not be recopied here.

I have carefully considered the authorities cited by counsel, as well as others not cited, and am led to the conclusion that the rule stated in the former decision cannot be sustained either upon principle or authority, and should not be declared to be the law of this state.

My first consideration will be of the cases cited by JUDGE COBB in the opinion written by him, above referred to.

The case of *Wallace & Krebs v. Wainwright*, 87 Pa. St., 263, was one in which the transfer of property was made to Wallace & Krebs—who were attorneys and represented a number of creditors—in payment of the claims held by them. Some of the creditors named were not present nor represented, some afterwards assented to the arrangement, some neither assented nor refused to assent. Wainwright obtained a judgment and had an execution levied on the claims and judgments which had been assigned to Wallace & Krebs. The trial court held the transfer to them to be an assignment for creditors. This was affirmed by the supreme court, which held that the transfer created a trust. The legal title of the assigned property being in Wallace & Krebs and the equities in the creditors. I have not at hand the statute upon which this decision was made, but by the references made to it in the

opinion as applying to the assignment of property made by debtors "to trustees on account of inability at the time to pay their debts," I think it sufficiently appears that the decision is based wholly upon the language of the statute of Pennsylvania, and can have no bearing upon this case. It is pretty clear that the statute of that state refers to assignments of property made by debtors to trustees, and under that language the court could very properly hold that Wallace & Krebs took the property as trustees under the statute, and it was therefore an assignment.

The case of *Hardraker v. Leiby,* 4 O. St., 602, would be strongly in favor of the position of defendant in error, were it not that the decision is based wholly upon the statute of Ohio, which is as follows : " All assignments of property in trust which shall be made by debtors to trustees in contemplation of insolvency with the design of preferring one or more creditors to the exclusion of others shall be held to inure to the benefit of all the creditors in proportion to their respective demands."

This in effect defines a legal general assignment for the benefit of creditors, and a case like the one at bar falls clearly within its provisions, and would be a general assignment, but as we shall hereafter see, no such provision can be found in the statutes of this state governing assignments of property, and therefore we fail to see how the case above named can be quoted as authority.

The case of *Page v. Smith,* 24 Wis., 368, would seem to support the theory of the defendant in error, but whether based upon the statute of that state is not clear. It follows the decision in the case of *Norton v. Kearney,* 10 Wis., 386, which was decided in 1860. In 1885 a question similar to the question involved in the case at bar was before the same court in *Carter et al. v. Rewey,* 62 Id., 552 ; and while the case of *Page v. Smith* is not in terms overruled, yet I am inclined to adopt the reasoning of Judge Cole in the opinion as being the last expression of that

32

court upon the question involved, and which to my mind is the most logical. The instrument under consideration in that case was a chattel mortgage, in the usual form, executed by Charles H. McLean, the debtor, upon a quantity of jewelry and other personal property named, upon the condition that if McLean should forthwith pay three debts specified, amounting to $385, also to secure such other claims against him as might come in the hands of the plaintiff for collection, and a claim of Aiken, Lambert & Co. for $127, then the sale should be void. The mortgagee took possession of the property, and had such possession when it was seized under certain orders of attachment. I quote from the opinion the following:

"There is no pretense that the debts which the chattel mortgage was given to secure were not the *bona fide* debts of the mortgagor, but it is said that McLean was justly indebted to other creditors when he gave this mortgage upon his entire stock of goods, and that the plaintiff knew the facts. But, still, it is competent for a debtor in failing circumstances to pay or secure one creditor or a number of creditors, where there is no statute forbidding such preferences, and the transaction is not tainted with an unlawful intent."

It was contended in that case that the instrument there under consideration was in effect an assignment for the benefit of creditors, and void by reason of the failure to comply with the requirements of the statute governing assignments. The mortgage was sustained and held not to be an assignment. It contained the element of trust, as in the mortgage in question in the case at bar. In view of that decision we do not think the supreme court of Wisconsin can be cited as sustaining the theory contended for by defendant in error.

Referring to the cases cited by the defendant in error, *Englebert v. Blanjot*, 2 Wharton (Penn.), 240, is relied upon. The decision was made in 1836, and is founded upon an act of the legislature of 1818. The debtor assigned and conveyed

a collection of personal property to his creditor to sell and satisfy his claims, and then pay other creditors named, the balance remaining to be returned to him. From the language of the opinion it is inferred that the act referred to makes an assignment or conveyance "for the use of his creditors" or "for the use of such persons to whom such assignment is made and other creditors" an assignment for the benefit of all creditors, and requires assignments to be recorded. This was never recorded. The next day the debtor applied to the court for the benefit of the insolvent laws, setting forth in his petition that he had conveyed all of his property in the assignment the day before, and annexed to the articles conveyed a list of his creditors. On the 3d of April, twenty days afterwards, he executed an assignment under the law. The assignees refused to act, and Engelhower was appointed by the court. Engelhower then brought suit for the property conveyed by the first transfer, and succeeded in his action. The court held the first assignment void because not recorded. Under the very general terms of the act of 1818, we cannot see how any other holding could have been had, as the first transfer was "for the use of his creditors," and was by the act made an assignment of his property.

This view is sustained by the holding of the same court in *Lockhart v. Stevenson*, 61 Pa. St., 64. This case was decided in 1869. Wooten having failed, sold by bill of sale and delivered his stock of goods to Lockhart, in consideration of certain claims held against him by Lockhart and part of his other creditors. He had previously made arrangement among those to divide the proceeds *pro rata*. The trial jury found the transaction was *bona fide*. It was claimed that the bill was an assignment for creditors, which was required to be recorded. There being no trust for creditors, the question was, Was it a sale or an assignment? It was held to be a sale, and not an assignment.

The case of *Burrows v. Lehndorff*, 8 Iowa, 96, was decided

in 1859. The facts in that case were substantially as follows: On the 16th of January, 1857, the debtor made three chattel mortgages to secure that number of creditors, all made at about the same time, Burrows being the last of the three, taking in his order. On the 17th he made two more to other creditors, and a deed of trust to one Sylvester to secure other creditors, the whole indebtedness being $4,922.04, the instrument covering the same goods, and the deed of trust contained in addition some real estate, the first taking precedence as to its payment, the others following in their order. It was filed January 17th, 1857, at 5:50 o'clock, the others following in their proper order of succession every five minutes. The debtor's attorney notified the plaintiff the next day. On the 28th of the same month he caused an attachment to issue. The statute of that state, at that time, was, that no general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors of the assignor shall be valid unless made for the benefit of all creditors, in proportion to the amount of their claims. In the discussion of this statute Judge Wright, in rendering the opinion of the court, says: "*But for this provision,* any debtor might make a general or partial assignment to a trustee for the benefit of his creditors with preferences, the said assignment being valid as against the process of said creditors from the time of the execution of the deed, subject, of course, to any liens upon the property assigned." In support of this he cites a number of cases to which we need not refer. He then says the primary and controlling question is, Was this an assignment? The question of fact was submitted to the jury. The instruction of the court was, in substance, that if the instruments were executed at the same time and constituted one transaction, were made by defendant on his own motion, and he was at the time insolvent and by these instruments conveyed all his property not exempt from execution, then the conveyance would

be an assignment, and void. The jury found against the defendant in the action, and the instruction and verdict were sustained. The case seems to have been in the main sustained upon the finding of the jury that the instruments were executed at the same time and constituted one transaction, and as being in violation of the statute of the state to which we have referred.

The case of *Van Patten and Marks v. Burr et al.*, 52 Iowa, 518, was decided upon a demurrer to the petition. The petition alleged that the defendant executed a chattel mortgage for the benefit of a part of his creditors, and immediately, and on the same day, made a general assignment for the benefit of all, and that they were intended as a whole to constitute a deed and general assignment, that these instruments were prepared by the assignor's attorney at his request, both acknowledged before the same officer, and filed by the attorney for his client at 2:54 and 3:00 o'clock P.M. before delivery, and that the assignment as a whole was void because it gave a preference to one of the creditors. The demurrer to the petition was sustained by the district court, the judgment being reversed by the supreme court.

Justice Beck, in delivering the opinion of the court, says : "The transaction contemplated in the provision of the statute which is substantially quoted in the case last above cited and termed a general assignment, is a disposition of all the property of the insolvent for the benefit of all his creditors," and it did not matter how this was done, whether by one instrument or more; if all constituted one transaction as alleged, and conveyed all the property for all the creditors, it was an assignment. As it preferred those to whom the mortgage was given, it was void. The petition alleged that they as a whole were intended as one assignment. Now as a general assignment constituted a part of that transaction, it is very clear that the decision of the supreme court was right, being based alone upon the alle-

gation of the petition that both instruments were intended
by the insolvent as the one act of assignment.

The case of *Lamson v. Arnold*, 19 Iowa, 479, may be
considered as throwing some light upon the holding of the
supreme court of that state, although not directly in point.
In that case the debtor, simultaneously with an assignment,
conveyed lands to one creditor in payment of a debt.   An-
other he paid in money, and the third part in money and
part by the transfer of promissory notes.   The court held
that the insolvent had the right, in that way, to prefer
creditors.

The case is based upon the right of the insolvent to ap-
propriate his property while he exercises over it the *jus
disponendi* (the right of disposition).   The statute sim-
ply limits his right to prefer creditors where he makes
a general assignment.   It was held that the payments and
the assignment did not constitute one transaction so long
as the insolvent retained the right of disposing of the
property; that he might appropriate it to the payment of
his debts, and might prefer creditors.   He might use all of
his property in this way, or he might so use part and make
a general assignment of the remainder.

The distinction is drawn between the absolute appropri-
ation of the property and conveyance by way of mortgage,
if the debtor intends disposing of all his property for the
benefit of his creditors.   But if he mortgages a part and
assigns the remainder, this constituted one transaction.
The property passes to the mortgagee or assignee in trust,
to be disposed of as required by law and the conditions of
the instruments he executes.   In that case, the mortgage
and the assignment being coupled together and included in
the one transaction, would become the one act of the debtor,
and under the statute all the property would be included in
the assignment.   If, then, while the right of disposing of
the property exists, the debtor, as in this state, has the
right to prefer creditors, there being no attempt to make a

general assignment, it would seem that he might make such a disposition of his property to secure *bona fide* debts as he should desire.

The case of *Dickinson v. Rossen*, 5 O. St., 218, is based upon the same statute as *Hordraker v. Leiby*, *supra*, and need not be noticed.

The case of *Winner v. Hoyt*, 28 N. W. Rep., 380, was decided by the supreme court of Wisconsin during the last year. The principal facts in that case were, that six chattel mortgages were made and accounts were assigned to secure several debts. The mortgages covered substantially the same property. All were made at the same time. The mortgagees knew the mortgagor to be insolvent. The property mortgaged was all the mortgagor had, and did not cover more than sixty per cent of the debts. It was intended that the mortgagee should take immediate possession, which he did, convert all into money, and divide it among the creditors *pro rata.* Upon a garnishee process against him it was held that the several mortgages and assignments constituted one transaction, and that the garnishee acted as the trustee of the mortgagees and assignees, except as to his own claim, and that it was not, in legal effect, an assignment for the benefit of creditors, preferring those named, and void. This decision was founded upon the provision of the statute of that state, which, so far as necessary, we quote: "All voluntary assignments or transfers, whatever, of any real estate, chattels real, goods or chattels, rights, credits, moneys, or effects, for the benefit of or in trust for creditors, shall be void as against the person making the same, unless" executed as therein required, and "any and all assignments  *  *  *  made for the benefit of creditors which shall contain or give any preferences to one creditor over any other creditors, except for the wages to laborers  *  *  *  shall be void." It will be observed that this language is sweeping in its character, not only including all voluntary assignments, but all transfers whatever for the benefit of or in trust for creditors.

It would seem that the existence of such a provision would tend to forestall any question as to the effect of such transfers, yet Judge Taylor dissents from the opinion of the majority of the court, and writes a lengthy and logical opinion, holding that : 1st, a debtor may prefer a creditor; 2d, that he may prefer more than one; 3d, he may mortgage part of his property ; 4th, he may mortgage it all.

The decisions in this state may be said to settle these four propositions in the affirmative.  A debtor may prefer his creditor; he may prefer more than one ; he may mortgage a part of his property, or he may mortgage all, if done *bona fide. Lininger v. Raymond,* 12 Neb., 19.  *Grimes v. Farrington,* 19 Neb., 48.  *Nelson v. Garey,* 15 Neb., 531.  *Bierbower v. Polk,* 17 Id., 268.

We will briefly notice the authorities presented by plaintiff in error, and, in addition thereto, some to which neither party has referred.

The case of *Gage v. Chesebro* (Wis.), 5 N. W. Rep., 881, is one in which a debtor assigned personal property to his creditor, authorizing him to go into possession, sell and dispose of the same, apply the proceeds to extinguishing indebtedness due creditors, and retain the balance, to be applied upon certain notes, upon which the creditor was endorser, in case they were not paid by the assignor.  This instrument was held a chattel mortgage, and not an assignment for the benefit of creditors ; therefore not void because of a failure to comply with the law in regard to assignments. It is held  that wherever it appears that an instrument is intended as security the debtor has the right of redemption if seasonably exercised, and that the garnishee should not, by reasons of the proceedings against him, be put in a worse position than if the different claims were enforced against him by the defendant himself.  It is also held that the creditor might, though he knew his debtor was in failing circumstances, if his action was honest, and not for a fraud-

ulent purpose, take an assignment of all his debtor's prop-
erty to secure himself, and if the debt was *bona fide*, and
the assignment made without fraudulent intent, it was
valid.

In writing the opinion of the court, Judge Cole says:
"It is true there is no defeasance in the instrument, nor
was it designed there should be, to give the grantor the
right to reclaim the property upon the payment of the
debts and liabilities therein mentioned, for whenever it
appears that the instrument is intended merely as a security
the debtor has the right of redemption, if seasonably exer-
cised. But without longer considering the question, to
our minds it is plain that the instrument is nothing but a
mortgage, and cannot be held void upon its face for any of
the objections taken to it."

In *Peck v. Merrill*, 26 Vt., 686, Merrill became embar-
rassed and Page, Lowell, and Toplin became his sureties,
and to secure them from liability he turned over to them
all his property at East Greenfield, subject to an attach-
ment, and also his store at South Bradford. Peck & Co.
garnished Page, Lowell, and Toplin under what was
known in that state as trustee process. There was no as-
signment law in Vermont, but there was a law absolutely
prohibiting assignments, making them void as against the
creditors of the debtor. Without quoting at length from
the opinion, it may be said that it was held that the act of
1843 prohibited general assignments which should be so
construed as to be confined to such transfers of property
as were made in trust for creditors, and that the transfer
by a debtor of all his property did not make of it what is
termed a general assignment unless it also be conveyed to
trustees to be held in trust for their creditors, and if the
debtor conveys his property directly to creditors or sure-
ties for their benefit, and no trust is created for others, the
transfer must then be regarded as a mortgage or pledge
of personal property, and in such a case the creditor or

surety cannot be held as the trustee of the debtor unless
there is a surplus left in his hands after discharging his
claim against or liability for the debtor.    It seems that
previous to the passage of the act referred to, general com-
mon law assignments had been sustained by the courts.
They were generally made to friends for preferred cred-
itors who kept all, or covered up the property, or returned
it to the debtor. Sometimes assignees were wholly irrespon-
sible.    The act prohibited only assignments.    It was held
not to prohibit the transfer of property to preferred cred-
itors or sureties.

*McGregor v. Chase,* 37 Vt., 225, was decided in 1864,
an assignment law having been enacted, but the decis-
ion does not give its provisions.    It decides that the
deed, with conditions to be void if the debts were paid
which it was given to secure, was a mortgage to secuie
debts of the grantees and for liabilities they had incurred.
It was sustained as being a mortgage and not an assign-
ment.

The case of *Lowe v. Wyman,* 8 N. H., 536, was one in
which Wyman, being in failing circumstances—and a con-
siderable portion of his property being attached and taken
by his creditors—transferred to an attorney, who held a
claim against him, certain notes and accounts as collateral
security.    The attorney collected some $200, but not
enough to pay his client.    It was contended that the de-
livery of the notes and accounts was an assignment within
the meaning of the assignment law and void, and under
trustee process (garnishment) the attorney should be held
liable to the plaintiff.    The decision is, that the debtor may
pledge his property to secure the payment of a preferred
debt, and that such transfer would not be a violation of
the assignment law which was, that no general assignment
should be valid except it provided for an equal distribution
of all the property among the creditors in equal propor-
tion.    It is said that a debtor may pledge all his property in

payment of a particular debt, and that the assignments intended by the statutes are general assignments purporting to convey all the debtor's property to trustees for the benefit of all his creditors. It appears that previous to the enactment of the assignment law, assignments were made that did not include all of the assignor's property, although so claimed ; hence the act was passed requiring him when he did make an assignment to make oath that the deed included all the property he had and .that it should be equally distributed, otherwise the transfer was void.

As we shall see further on, it seems to the writer that this principle must be the governing one in the case at bar. That the provisions of the assignment law of this state are intended to apply to general assignments made *as such* and with the purpose and intent of the assignor to convey his property for the benefit of all his creditors, and that no mortgage or transfer of his property as security, when not *intended* as an assignment, will be held to be such.

The case of *Barker v. Hall*, 13 N. H., 298, was where a mortgage was executed by a debtor, conveying all of his property to secure the payment of a · portion of his debts, leaving others not provided for. This was held not to be an assignment within the meaning of the statute of July 5, 1834, entitled an act for the equal distribution of property assigned for the benefit of creditors.

The case of *Dana v. Stanfords*, 10 Cal., 269, was a proceeding in garnishment against mortgagees. Dietz, the debtor and judgment defendant, mortgaged all his property to Stanfords to secure debts actually due him, and indemnify him against indorsements Stanfords had made for him. From an examination of the case, it appears that it is similar in some respects to the Vermont case. Assignments had been made to friends and insolvent assignees before the enactment of the assignment law, and the

law was enacted for the purpose of preventing that spe
cies of fraud, but not intended to prevent an insolvent
debtor from transferring his property directly to creditors,
either absolutely in payment of his debts, or as security
by way of mortgage.    The mortgage was held to be
fair, *bona fide*, and without fraud, and not an assignment.
In the very able opinion written by Judge Field, we find
a reference to the statute of some of the states.    The state
of New Hampshire is somewhat like our own.    In Con-
necticut the words "In trust for creditors" occur in the
act.    In Ohio the words "In trust" govern assignments
for creditors.    In New York the statute contains the
words, "In trust for the use of the person making the
same," and in all these states a mortgage to the creditors
has been held good.

In *Morse v. Powers*, 17 N. H., 286, a mortgage was
given to secure a debt to the mortgagee and to indemnify
another person against loss for having endorsed a note
with the mortgagor as security.    In this case it is said :
"The objection that the mortgage is invalid because it is
partly in trust for the benefit of Robert Morse, and thus
itself in the nature of an assignment, cannot be sustained.
It is not essential to the validity of the mortgage that it
should be wholly for the benefit of the mortgagee, nor
would the trust for the benefit of a third person of itself
give it the character of an assignment within the act re-
quiring assignments to comprehend all the property of the
debtor and be without preferences."

In *Kohn v. Clement, Morton & Co.*, 12 N. W. Rep., 550
(Ia.), Waynick & Co. were in business and became in-
debted.    They made a mortgage to Kohn Brothers upon
their stock in trade, which constituted their assets, to se-
cure several other creditors, most of them, but omitting
Clement, Morton & Co., they seeking a judgment to take
execution.    This was held not to be an assignment, as there
was no intention it should be such.

The case is similar to the one at bar, except that Kohn Brothers, the mortgagees, were creditors, while Bonns was the agent of one of the creditors. Under the rule laid down in that case, if Bonns had been a creditor himself, instead of the agent for one of the creditors, his title to the property would have been good, so far as appears upon the face of the mortgage. We are not quite able to see why the fact that he was the agent of a creditor, and not the creditor himself, should change the rule to be applied to the instrument executed.

In *Cadwell's Bank v. Crittenden, Garnishee,* 23 N. W. Rep., 646 (Ia.), one Creager was in business and heavily indebted. Among his creditors were Smith and Crittenden, whom he had promised to secure when desired. His house and store were burned. When informed of the disaster to the property, Smith and Crittenden took assignments of all debts in Council Bluffs, where they resided, and Crittenden went to Logan, the place where Creager was in business, and procured assignments to him of Creager's book accounts, insurance policy, etc., to pay himself and other creditors in Council Bluffs. Creager was at that time indebted to the bank in Logan. This transfer to Crittenden was held not to be an assignment, that whether or not it was such depended upon the intention of the parties, as might be shown by the circumstances of the transaction. That if the conveyance is to a trustee, and the debtor intends to divest himself not only of the title to the property, but of all control over it, if it is intended as an absolute conveyance of all his property and is made for the purpose of securing a distribution of the proceeds among his creditors, or a portion of them, it is in legal effect an assignment. On the other hand, if the intention of the debtor is merely to secure his debts to one or more of his creditors, and the conveyance is not intended as an absolute disposition of his property, but reserves to himself a right therein, the conveyance will be treated as

a mortgage, even though the debtor is insolvent at the time and it covers all of his property, and but a portion of his debts are secured by it.   Some reference is made to the claim that the property was conveyed to Crittenden in trust for other creditors, but it was held that while Crittenden was the trustee, yet as between him and Creager, the debtor, he was not, and as between them the debt was due to him; that he was not a trustee of Creager's appointment, but as to him the holder of all the claims.

In *Gage v. Parry*, 29 N. W. Rep., 824 (Ia.), Morse & Humphrey, who were partners, gave Baker and Jones, who were their creditors, a mortgage on their stock of goods.   They also gave a mortgage to Hard, and assigned their accounts to Briscoe; then, within an hour, but not as a part of the first transaction, made a general assignment to Perry.   This assignment was made before the mortgage to Hard and the assignment to Briscoe were delivered. The mortgages to Baker and Jones were held good upon the ground that the creditors of Morse & Humphrey had no lien upon the property of the firm and they, Morse & Humphrey, could do as they wished with it.   They could pay or secure any or all of their creditors, with any or all of their proceeds, and such payment or security would not be effected by the assignment.

In *Waterman v. Silberberg*, 2 S. W. Rep. (Texas), 578, Marks, the mortgagor, was indebted to a large number of persons.   Among his creditors was Silberberg, to whom he owed something over $2,000.   The whole indebtedness was $15,000.   Silberberg was his surety for all the debts named in the mortgage, ten in number   These debts, with that due Silberberg, amounted to over $10,000.   The mortgage was made to Silberberg to secure his debts and those for which he was surety.   Silberberg took possession of the mortgaged property, which included all of the property of the debtor, and Waterman attached and levied on a part of the property, claiming that the transfer

to Silberberg was void, as being in contravention of the assignment law, by reason of its preference of creditors. The mortgage was held valid as being a legal mortgage and not an assignment.

The case of *Tootle v. Coldwell*, 30 Kan., 125, was one in which an attachment had been issued at a suit by the plaintiff against the debtor, Coldwell. . Prior to the attachment Coldwell had executed chattel mortgages on the stock of goods in his business to his wife, to secure the sum of $2,670; to Claflin, Allen, & Co, to secure $2,000; to P. V. Coldwell, to secure $354, and to a number of other creditors, all of which were stated to be *bona fide;* and it was contended that these mortgages were void, as being against the provisions of the assignment law of that state, that they constituted altogether a voluntary assignment for the benefit of his creditors. In discussing this question, Judge Valentine, who wrote the opinion of the court, says: "The mortgages were not executed to a trustee as voluntary assignments under the assignment law of the state, but they were executed directly to the creditors themselves. They were not executed in the manner in which the statute requires voluntary assignments to be made."

. The assignment law does not prohibit the execution of such mortgages, and being intended as such for the purpose of securing *bona fide* debts they were valid.

The case of *Scott v. McDaniel*, 3 S. W. Rep., 291, was decided during the present year. Wheat and Thompson, being indebted to various persons, conveyed to McDaniel property in trust to sell to pay certain enumerated debts described in the instrument. The debts described did not constitute all of the indebtedness of Wheat and Thompson, there being others which were not provided for. This conveyance was held not to be an assignment, and void, because of the preferences which it contained; that the assignment law has reference only to assignments made

under it, and that preference was given through instruments other than such assignments as the act contemplates are valid, unless in contravention of the act concerning fraudulent conveyances.

In *Gallagher's Appeal*, 7 Atlantic Rep., 237 (Pa.), it is held that the law of Pennyslvania seemed to prohibit preferences in the assignment, under the act, but it does not prevent a debtor from preferring his creditors, or any of them, so long as he retains dominion over his property and there is no fraud in the transaction, and it is done *bona fide*. This decision was made in 1886, and is, perhaps, a construction of an assignment law enacted after the decisions of that court hereinbefore referred to were made.

In Jones on Mortgages, Sec. 355, it is said it is not essential to the validity of a mortgage that it be wholly for the benefit of the mortgagee. It is not objectionable that it secures a debt due him and a debt due another, so that the mortgagee holds the mortgage partly in trust for the benefit of a third person. Such a trust does not give it the character of an assignment within the act requiring assignments to comprehend all of the debtor's property, and to be without preferences, and that a mortgage is not objectionable as an assignment for the benefit of creditors which is made to a creditor to secure a debt to him alone, or to secure a debt to him and also the debts of other creditors named.

In Burrill on Assignments, Sec. 6, page 12, it is said, in substance, that a mortgage resembles an assignment more closely in its leading features of being a security or provision for a debt involving a resulting interest to the grantor on a certain contingency. An assignment is more than the security for a payment of debts: it is an absolute appropriation of the property to their payment. It does not create a lien in favor of creditors, but conveys the whole title, legal and equitable, to the assignee. There remains, therefore, no equity of redemption to the property, and the trust

which results to an assignor in the unemployed balance, does not indicate such an equity.

A clear distinction is made in New York between assignments and mortgages; but as the words "in trust" are in the New York statute, the decisions do not aid us. By the New York law and decisions a debtor may make a mortgage directly to one or more of his creditors, but not to one for others, or himself and others, owing to the existence of those statutory words.

From this review of authorities cited, I conclude that the fact that the transfer was made to Bonns as trustee for the creditors named, does not necessarily destroy the instrument as a mortgage, as the statute of this state contains no provision that. the existence of such trusteeship shall render. the instrument void, unless it complies with the law of assignments.

The proper discussion of this case must depend upon the construction of sections 1 and 29 of the assignment law of Nebraska. Comp. Stat., Ch. 6. They are as follows:

"Sec. 1. That no voluntary assignment for the benefit of creditors hereafter made shall be valid unless the same shall be made in conformity to the terms of this act."

" Sec. 29. Every such assignment shall be void against the creditors of the assignor: *First.* If it give a preference of one debt or class of debts over another, except a preference to any person of not more than $100 for labor or wages. *Second.* If it require any creditor to release or compromise his demand. *Third.* If it reserve any interest in the assigned property, or any part thereof to the assignor or assignors, or for his or their benefit, before his or their existing debts have been paid. *Fourth.* If it confer any power upon an assignee other or different from those contained in this act. *Fifth.* If the assignor or assignors shall fail to make the inventory required to be made by him or them by this act, within the time required by this act, the assignment shall not be void, but that the

county court may by attachment, or other proper remedy, compel the making and return thereof by the assignor. But the omission of any property or of the name or claim of any creditor therefor, shall not avoid the assignment."

By the first section no voluntary assignment for the benefit of creditors can be valid unless made in conformity to the act. Considerable of stress is placed upon the words "voluntary assignment." Burrill on Assignments, page 3, Sec. 2, defines voluntary assignments for the benefit of creditors to be: "A transfer, without compulsion of law, by debtors, of some or all of their property to an assignee or assignees, in trust, to apply the same, or proceeds thereof, to the payment of some or all of their debts, and to return the surplus, if any, to the debtor. Assignments, in this restricted sense, are distinguished with reference to their subject-matter, as being of all or of part of the debtor's property. The former are known as general assignments, in distinction from partial assignments, by which term the latter are defined. Such assignments are termed voluntary, to distinguish them from such as are made by compulsion of law, as under the statutes of bankruptcy and insolvency (the latter being sometimes termed statutory assignments), or by order of some competent court. Assignments, in the sense in which they are here employed, are usually resorted to by debtors who find themselves unable to pay their debtors in full, or the embarrassed state of whose affairs has compelled them to discontinue the transaction of business, and, in some instances, the provisions of the statutes which have been passed by the state legislature regulating and restricting the operation of such assignments are confined exclusively to assignments made by insolvents or by persons in contemplation of insolvency. But the insolvency of the debtor in his own estimation, or in fact, will not, apart from statutory provisions, unless connected with other evidences of fraud, invalidate the assignment."

Assuming this definition of the term voluntary assignment to be the correct one, the provisions of the first section of the assignment law of this state referring to voluntary assignments, must be for the purpose of distinguishing such assignment from an involuntary assignment, as under the laws of bankruptcy. There being no such law at this time, the word "voluntary" can have no essential or particular meaning with reference to the case at bar. The statute would then be that no assignment for the benefit of creditors shall be valid unless it conform to the provisions of the act. Section 20 simply provides that such assignments shall be void unless they comply with the provisions therein contained. As we have before stated, there is no intimation that anything short of an assignment under the law shall be held to be such. In other words, the act assumes to have nothing to do with any transfer not intended *as* an assignment. The words "in trust," or, "in trust for the benefit of creditors," do not occur. It therefore seems quite clear that to constitute a voluntary assignment the conveyance must have been so intended by the grantor; that it must have been his purpose at the time of the execution of the instrument to make a voluntary assignment under the provisions of the assignment law, such intention to be drawn from the surrounding circumstances and by the language of the conveyance.

I am inclined to think that the statute refers only to assignments when intended as such; that is, when a debtor undertakes to make an assignment under the statute, he must make it in accordance with it, otherwise it is no assignment, and is void; and the rules relating to the construction of mortgages and other instruments somewhat akin to assignments, but not intended as such, remain unchanged; and therefore this mortgage is not an assignment, in the sense referred to in the 1st and 29th sections of the assignment law, and is not, for that reason, void.

A mortgage is a conditional transfer of property. A

voluntary assignment is absolute.    The debtor has a perfect right to prefer one or any portion of his creditors, and in the absence of fraud to secure them in part or in whole by the transfer or mortgage of any or all of his property, leaving the remainder of his creditors entirely unprovided for.    He has the right, if *bona fide*, to execute a chattel mortgage to a creditor on any part or all of his property to secure just debts.    He may also include in such mortgage any other creditors he may desire, and the mortgage will hold for all so included.    Debts may be assigned to one creditor by a portion of the others, and he can take a mortgage to himself for all who so assign and it is valid. It remains a mortgage.

I can find no case or test where the question of the validity of a mortgage to a third party is discussed but that it has been held bad, but all of these cases are in states where conveyances "in trust" are expressly prohibited, unless under certain conditions, such as the conveyance of all the property for the benefit of all the creditors.    Our statute contains no such provisions.

If the mortgage had been made to Rice, Friedman, and Markell, or to any other one of the creditors direct and for the benefit of the others, it would be good under the rule laid down in *Morse v. Powers*, 17 N. H., 286; *Kohn v. Clemment, Morton & Co.*, 12 N. W. Rep., 550; *Carter v. Rewey*, 62 Wis., 552; *Scott v. McDaniel*, 3 S. W. Rep., 291; *South Carolina Loan and Trust Co. v. McPherson*, 2 S. E. Rep., 267, and others, which we do not now call to mind.

Why would it not be as good if made to Bonns, as if made to his principal?    Does the fact that Bonns was the agent of Rice, Friedman, and Markell require the application of a different rule than would have been applied if they themselves were substituted for him, or if he had been a creditor?    So far as appears he had full authority to take security for the debt due them.    He doubtless had

the right to take the mortgage, either to himself or to his principals. I cannot believe that the mere fact that it was so written in the mortgage should change the application of the rule.

I therefore conclude that the instruction of the court to the trial jury that the instrument referred to "is an assignment for the benefit of creditors, and as such, void under our statute, and conveyed no title to the plaintiff in this action against other creditors," was erroneous; and for that reason the judgment of the district court should be reversed.

MAXWELL, CH. J.

The elaborate and carefully prepared opinion of Judge Reese is entitled to receive and has received great consideration. He shows conclusively that at common law a debtor may prefer one or more creditors, and if this case rested upon that proposition alone, I would favor a reversal of the judgment; but even at common law a debtor could not give to one or more of his creditors a greater amount of his property than would satisfy the debt or debts, and thus hinder, delay, or defraud other creditors. Thus, suppose A is indebted to B in the sum of one thousand dollars, and is also indebted to other persons; he cannot pay B eleven hundred dollars, or any greater sum than is due to him in satisfaction of the claim. Such payment, if made, would be in excess of the amount due B, and he would hold it like any other mere *donee*. Every person holds his property in two distinct capacities: first, as owner, and second, as *quasi* trustee for the benefit of his creditors. The law therefore requires him to apply his property to the purposes to which he impliedly pledged it in procuring credit, viz., the satisfaction of his debts—in other words, the law requires the debtor to execute the trust in good faith; and if he fails to do so, the law, as

far as possible, will enforce the trust. A debtor, there-
fore, under the pretext of preferring certain creditors, can-
not overpay them nor reserve a secret trust in the property
in his own favor, and the creditor who greedily grasps
and obtains more of a failing debtor's property than he is
entitled to, to the exclusion of the claims of other credit-
ors, does so at his peril. The statute against hindering,
delaying, and defrauding creditors is plain and unambig-
uous, and there is no reason why it should not apply to a
creditor who receives more than he is entitled to of a fail-
ing debtor's property. The rule of the common law al-
lowing a failing debtor to prefer one or more of his cred-
itors is entirely arbitrary; is contrary to justice and right,
and has naught to commend it except a line of authorities.
If a debtor is unable to pay his debts in full, it certainly
is but justice that each creditor should be paid a fair pro-
portion of the entire assets of such debtor. Any other
rule carries upon its face the stamp of unfairness, and
should as far as possible be discouraged. The general as-
signment law of the state prohibits preferences, except in
certain trifling matters, and but for the first section of that
act no doubt would control in this case. A debtor who by
any instrument transfers all his property to one or more
creditors, or other persons, for their benefit, has *in fact as-
signed it*. So far as his right, control, and possession of
the property are concerned, they have passed to others,
and are not to be returned to the debtor until the purposes
of the trust are accomplished; and then only the residue
of the property is to be returned. No refinement of defi-
nition can make such a transfer essentially different from
an assignment. In the instrument under which the
plaintiff claims, is the following: "And I, the said B. C.
Hamilton, hereby authorize the said S. H. Bonns to take
immediate possession of the same, and to sell the said
property in the usual course of business, at retail and pri-
vate vendue, and apply the proceeds of the sales in *pro*

*rata* proportion, as the same may become due. The balance of the proceeds of the sales thereof and of the goods and chattels remaining after paying all reasonable expenses connected with the taking and selling of said property, if any there be, to be paid or returned to the said B. C. Hamilton, or his assigns, immediately upon the said notes being so paid." *Bonns v. Carter,* 20 Neb., 574. This is the language of a trust, and the trustee was the assignee named in the instrument, and as under our statute such assignments are prohibited, and declared invalid, it was of no effect. The judgment heretofore rendered is, therefore, in my view, right, and should be adhered to.

JUDGMENT AFFIRMED.

COBB, J., concurred in adhering to the former judgment.