Bonns v. Carter.

SAMUEL H. BONNS, PLAINTIFF IN ERROR, V. WILLIAM H. CARTER, DEFENDANT IN ERROR.

**Assignment for Creditors.** An instrument in writing, claiming to be a chattel mortgage, executed by H. to B., whereby H. bargained and sold to B., as trustee for R. F. & M., H. F., R. M. & F., S. J. & Co., J. M. P., J. J. B., and W. L. P., all of his dry goods, clothing, hats, caps, notions, &c., together with all book accounts, &c., and containing the proviso and condition that if the said H. "shall pay to said B., trustee, or his assigns, his seven promissory notes of even date herewith, as follows, to-wit, (giving a description of seven notes payable to the above-named parties and firms, respectively)," and I, the said B. C. Hamilton, authorize the said S. H. Bonns to take immediate possession of the same, and to sell the said property in the usual course of business, at retail and private vendue, and apply the proceeds of the sales thereof to the payment of the said notes in *pro rata* proportion as the same may become due. The balance of the proceeds  *   *   *   *   to be paid or returned to the said B. C. Hamilton or his assigns, immediately upon the said notes being so paid," etc., *Held*, To be an assignment for the benefit of creditors ; and not being made in conformity to the terms of the chapter of the Compiled Statutes entitled "assignments," further *Held*, To be void as against creditors.

ERROR to the district court for Cherry county. Tried below before TIFFANY, J.

*Holmes & White*, and *George B. Lake*, for plaintiff in error.

*E. F. Gray*, for defendant in error.

COBB, J.

This was an action of replevin commenced by Samuel H. Bonns against William H. Carter, sheriff of Cherry county. The property replevied consisted of a stock of merchandise formerly owned by, and in the possession of, B. C. Hamilton, but which had been conveyed by him to

Samuel H. Bonns by an instrument claimed to be a chattel mortgage, and which had been afterwards levied upon and taken from the possession of said Bonns by the said sheriff, upon an order of attachment issued in an action pending against Hamilton, and in favor of one of his creditors. The order in replevin was served by the coroner of the county, and the property delivered to the plaintiff, he giving bond and security therefor as required by law.

The defendant's answer consists of a general denial. There was a trial to a jury, with a verdict for the defendant, and judgment for a return of the property replevied, or if a return thereof could not be had, that defendant recover of the plaintiff the sum of $1129.50 (the amount of his judgment against Hamilton), and costs of suit. The plaintiff brings the cause to this court on error, and assigns the following errors:

"*First.* That the court erred in refusing to give the first instruction requested to be given to the jury on behalf of the said plaintiff.

"*Second.* The court erred in refusing the second instruction to the jury requested on behalf of said plaintiff.

"*Third.* The court below erred in refusing to give to the jury the third instruction requested on behalf of the said plaintiff.

"*Fourth.* The court erred in refusing to give to the jury the fourth instruction requested on behalf of the said plaintiff.

"*Fifth.* The court below erred in the instruction given to the jury.

"*Sixth.* The court erred in holding and adjudging that the mortgage referred to in the instruction to the jury was in law ' an assignment for the benefit of creditors, and as such void under our statute.'

"*Seventh.* The court erred in directing the jury as to what sort of verdict they should return."

At the trial the following proceedings were had:

" Plaintiff being sworn, testified that he was employed as traveling salesman for Rice, Friedman & Markwell, of Chicago, dealers in gents' furnishing goods; that 19th or 20th of January, 1885, he went to Valentine for the purpose of collecting an amount due from B. C. Hamilton to his said employers. Hamilton, being unable to pay, plaintiff, together with Messrs. Curran and Spencer, representing respectively Steele,.Johnson & Co., and Reid, Murdoch & Fischer, creditors of Hamilton, demanded of him security for the amounts due their employers, and procured from him a chattel mortgage on his (Hamilton's) stock of goods.

" That said mortgage was also given to secure amounts owing by Hamilton to J. M. Phillips, W. L. Parrotte & Co., J. J. Brown & Co., and Henry Fuhrman, Parrotte & Brown being represented by H. R. Bisbee, an attorney residing at Valentine.

" That immediately upon the execution of the mortgage, plaintiff entered into possession of the stock and continued in possession thereof continuously till interrupted by the levy by defendant of a writ of attachment upon the portion of said stock which is in controversy in this action, and that the proceeds of the sales of goods from said stock were under the provisions of the mortgage applied to the part payment of the two debts secured by such mortgage, which were then due. Plaintiff also offered in evidence a copy of the mortgage under which he held the property which copy is 'Ex. A' attached to bill of exceptions."

The defendant objected to the introduction of the same in evidence as incompetent and immaterial, and because the instrument on its face is void, as being in violation of our assignment law for the benefit of creditors, and as being also in violation of section 17 of our statute of frauds, and it appearing on its face to be made with intent to hinder and delay creditors, which objection was overruled, and the paper received in evidence.

"H. R. Bisbee testified on the part of the plaintiff, that at the time of the execution of the mortgage in evidence he acted as attorney for Parrote & Co. and J. J. Brown, & Co., who were secured thereby, and accepted for them the security thus given.

"D. A. Holmes testified on behalf of plaintiff, that at the time of the execution of the mortgage in evidence he acted as attorney for Rice, Friedman & Markwell, and Reid, Murdoch & Fischer, and a few days subsequently was employed by J. M. Phillips to look after his interests in connection therewith, and instructed by said Phillips that its terms were satisfactory. Whereupon the plaintiff rested his case.

"Charles H. Cornell testified on the part of the defendant, that at the time of the execution of the mortgage in evidence he held for collection at the Bank of Valentine a draft for $325.00, drawn by the Consolidated Tank Line Co. on Hamilton & Gillett, and that Mr. Hamilton did not offer to secure the same in said mortgage.

"Henry Fuhrman testified on behalf of the defendant, that on the 20th day of January, 1885, he was a creditor of B. C. Hamilton to the amount of $1091.00, $550 of which was due. That shortly prior to said time he had sent Hamilton a statement of said amount due. That an attachment proceeding was commenced January 23d to recover the full amount of said claim. That he had no knowledge at that time of his claim or a part thereof being secured by the mortgage in evidence, and did not accept such security, he being in New York at that time.

"M. P. Kinkaid testified on the part of the defendant that about February 1st, 1885, he went to Valentine, and after making inquiries as to the property of B. C. Hamilton, 'found nothing practically available to creditors except the stock of goods covered by the mortgage to S. H. Bonns'. Defendant also offered in evidence a mortgage on same stock executed by B. C. Hamilton January 28, 1885,

in favor of other creditors, a copy of which is ' Ex. B' attached to bill of exceptions.

"Also an assignment by S. H. Bonns to Henry A. Thompson of first mortgage, the same bearing date January 28, a copy of which is attached to bill of exceptions marked ' C.'

"It was then admitted by plaintiff, that January 23, Henry Fuhrman commenced suit against Hamilton and caused to be attached the property in controversy by the defendant sheriff, that due and legal service was had and judgment rendered for $1,112.00 and $17.50 costs in favor of said Henry Fuhrman, and an order for the sale of the property attached was made, and that the attached property was appraised at $1,151.75.

"Whereupon defendant rested his case.

"H. R. Bisbee testified on behalf of plaintiff that he acted for certain of the creditors secured by second mortgage executed January 28, that the same was executed at his solicitation for the purpose of securing said claims. That he knew of other indebtedness owing by Hamilton not secured by either mortgage. That Hamilton never to his knowledge volunteered the execution of either mortgage or any other any instrument to secure creditors.

" S. H. Bonns testified that he delivered possession of the Hamilton stock to Henry A. Thompson, January 28, upon written request of J. J. Brown & Co., D. M. Steele & Co., J. M. Phillips, and W. L. Parrotte & Co., creditors, secured by the mortgage ' Ex. A,' which requests in writing are attached to bill of exceptions marked 'D,' ' E,' and 'F.'

" D. A. Holmes testified that 'Ex. A ' was not volunteered by Hamilton, but was obtained by him with difficulty as security for the creditors represented by him. That Fuhrman and Phillips, who were not represented at that time, were secured at Hamilton's request, he stating that ' they had used him white,' and would not give a

chattel mortgage unless their claims were secured thereby. That witness knew nothing about the amount of Hamilton's other indebtedness.

"J. A. Sparks testified that Hamilton held the building and lot occupied by him as store, under a contract for deed, on which $250 had been paid, and that the contract had been recorded with county clerk. And that improvements had been made by him on the property.

"Chas. W. Gillette testified that Hamilton was a single man.

"Defendant admits that the improvements made by Hamilton on the store property were of the value of $200.

"After evidence submitted the plaintiff asked the court to instruct the jury as follows:

"1. You are instructed that if at the time the attachment of Henry Fuhrman was levied upon the goods in controversy, the same were in the possession of the plaintiff holding them by virtue of the chattel mortgage first in evidence, and that said mortgage was taken by the creditors represented by the plaintiff in good faith for the purpose of securing an actual indebtedness due them, and that the plaintiff and the creditors for whom he acted had no intention of hindering, delaying, or defrauding other creditors of B. C. Hamilton, except in so far as the execution of such mortgage and the taking possession of the property mortgaged herein would of necessity hinder and delay them, at the time of the execution of said mortgage and during the time he had possession of the stock, before the levy of said attachment, your verdict will be for the plaintiff.

"2. You are instructed that to constitute this mortgage fraudulent there must have been existing in the mind of B. C. Hamilton, when he executed the same, an intent to defraud, hinder, or delay his creditors, or at least Henry Fuhrman, the attaching creditor, which intent must have been participated in by the plaintiff. And unless the

mortgage was executed in contemplation of the insolvency of B. C. Hamilton, and for the purpose of preventing the property therein conveyed from being distributed under the laws relating to insolvency or to defeat the object of said law or hinder or impede its effect, or to evade the same, which facts were known to the plaintiff or the parties for whom he acted, and within thirty days thereafter said Hamilton made a voluntary assignment under the provisions of said law, said mortgage is not fraudulent as being in conflict with the statutes of this state regulating assignments for the benefit of creditors.

"3.   You are instructed that if the mortgage under which the plaintiff had possession of the property in controversy was not fraudulent upon its face, and possession was taken immediately upon the execution thereof by the mortgagee, then the burden of proof is upon the defendant to establish fraud upon the part of the plaintiff in connection with the same; and unless the defendant has shown by a preponderance of evidence that the plaintiff in procuring such mortgage did so with intent to defraud the creditors of Hamilton, your verdict will be for the plaintiff.

"4.   You are instructed that a debtor has a legal right to secure one or more of his creditors by mortgage or sale of any or all of his property to the exclusion of all other creditors, providing he does not within thirty days thereafter seek to take advantage of the insolvent law by making an assignment for the benefit of his creditors as provided therein; and that unless such assignment be so made, the fact that other creditors are prevented by such mortgage or sale from collecting their demands, does not raise a presumption of fraud in the execution of such mortgage or the making of such sale.

" Which the court refused to give, to which ruling plaintiff excepted.

" The court then charged the jury as follows:

" You are instructed that the instrument named on the

back a 'mortgage,' dated January 20, 1885, and in evidence called in the trial the 'first instrument,' is an assignment for the benefit of creditors, and as such void under our statute, and conveys no title to the plaintiff in this action as against other creditors. Therefore it is your duty to sign by your foreman the verdict herewith handed you, just as it is drawn, and you are ordered by the court to sign this verdict by your foreman and return the same to the court."

The following is the instrument given in evidence by the plaintiff and marked exhibit "A":

"Know all men by these presents, That I, B. C. Hamilton, of Valentine, Cherry county, Nebraska, for and in consideration of the sum of one dollar in hand paid, and the further sum of four thousand three hundred and ninety and $\frac{46}{100}$ dollars, as represented by the seven promissory notes of the said B. C. Hamilton, executed in favor of the parties hereinafter named, in amounts as hereinafter specified, have bargained and sold, and by these presents do grant, bargain, sell and convey unto Samuel H. Bonns, trustee for Rice, Friedman & Markwell, Henry Fuhrman, Reid, Murdoch & Fischer, Steele, Johnson & Co., J. M. Phillips, J. J. Brown, and W. L. Parrotte, the following goods and chattels, to-wit: All his stock of dry goods, clothing, hats, caps, boots, shoes, notions, furnishing goods, groceries, queensware, glassware, tobacco and cigars, wooden and willow ware, together with all furniture, fixtures and articles now contained in and kept for sale in his store in Valentine, Nebraska, together with all book accounts now due me as evidenced by my books of accounts; and I hereby covenant to and with the said S. H. Bonns, trustee, that I am lawfully in possession of said property and the same is free from incumbrance, and that I will warrant and defend the same against the lawful claims of all persons whomsoever, provided always, and these presents are upon the express condition, That if the said B. C. Hamilton

shall pay or cause to be paid to said S. H. Bonns, trustee, or his assigns, his seven promissory notes of even date herewith, as follows, to-wit : One for six hundred and eighty-three and $\frac{54}{100}$ dollars due, one day after date in favor of Rice, Friedman & Markwell ; one for seven hundred and ninety-five dollars, due one day after date in favor of Steele, Johnson & Co. ; one for one hundred and twenty-five and $\frac{11}{100}$ dollars, due January 29, 1885, in favor of Reid, Murdoch & Fisher ; one for eight hundred and ninety and $\frac{9}{100}$ dollars, due February 1st, 1885, in favor of Henry Fuhrman ; one for nine hundred and thirty-two dollars, due February 15, 1885, in favor of J. M. Phillips ; one for three hundred and fourteen and $\frac{96}{100}$ dollars, due in favor of W. L. Parrotte ; one for six hundred and fifty-four and $\frac{3}{100}$ dollars, due February 10, 1885, in favor of J. J. Brown, with interest according to the tenor thereof, then these presents to be void. And I, the said B. C. Hamilton, hereby authorize the said S. H. Bonns to take immediate possession of the same, and to sell the said property in the usual course of business at retail and private vendue, and apply the proceeds of the sales thereof to the payment of the said notes in *pro rata* proportion as the same may become due. The balance of the proceeds of the sales thereof, and of goods and chattels remaining after paying all reasonable expenses connected with the taking and selling of said property, if any there be, to be paid or returned to the said B. C. Hamilton or his assigns immediately upon the said notes being so paid. The said Samuel H. Bonns hereby agreeing to take the property herein before mentioned and sell the same according to the terms hereof, and from time to time, as may be necessary in order to an expeditious sale of said property, replenish from the proceeds of such sales said stock by purchasing for cash such staple goods as may keep the stock saleable until the said notes are fully paid.

"In testimony whereof I have hereunto set my hand this 20th day of January, A.D., 1885.

"B. C. HAMILTON.

"Witness, D. A. HOLMES, }
" F. P. BUTTERFIELD." }

As the disposition of the case must depend upon the construction to be placed upon the above instrument in the light of the evidence, the substance of which is herein given, it is not deemed ·necessary to copy the instrument executed by Mr. Hamilton on the 28th day ·of January, and given in evidence by the defendant.

Upon one point the evidence is not quite·as conclusive or satisfactory as could be wished. That is, whether the instrument claimed to be a chattel mortgage covered all of Hamilton's property. However, there is some evidence to the point, from which I think it may be concluded that it did, substantially.

The instrument, as contended by counsel for plaintiff, contains all the elements of a chattel mortgage except that while it contains the usual defeasance clause, to prevent the conversion of the property into money, and its application to the payments of the debts secured in case of their payment by the mortgagor, yet it provides for the taking of the possession of the property immediately and its conversion and application by the trustee therein named, so as to effectively nullify the defeasance clause, as to its usual office when used in a mortgage, and gives it the same effect as when used in a deed of general assignment.

It may be said that in all cases where a mortgagee takes possession of property by virtue of a chattel mortgage, before or for the purpose of foreclosure, he occupies a relation of trust, but this relation applies only to the overplus, or what may remain of the mortgaged chattels. after the payment of the mortgagee's debt and the proper costs. But the instrument which we are now considering creates a trust immediately upon its acceptance by the mortgagee,

who is therein named as trustee. This I think is the turning point, more or less sharply defined, in all the cases where instruments, claimed to be mortgages, have been held to be assignments for the benefit of creditors.

The case of *Wallace & Krebs v. Wainwright*, 87 Pa. St., 263, cited by counsel for defendant, was like the case at bar in nearly all essential respects. Wallace & Krebs, attorneys at law, held a large number of claims against John Irvin & Bros. Irvin & Bros. executed a bill of sale to Wallace & Krebs of a large number of judgments and claims as was set out in the instrument in payment of the claims, held by said firm of attorneys. In the action brought by a creditor not provided for in said transaction, said bill of sale was held to be an assignment for the benefit of creditors, and that not having been recorded according to law it was void as against a subsequent attaching creditor. Also in the syllabus the court say: "A trust exists where the legal interest is in one person and the equitable interest in another."

The above case follows numerous other cases of the same state, cited in the opinion, and the principles therein sustained are believed to be well settled.

In the case of *Harkrader v. Leiby*, 4 Ohio State, 602., also cited by counsel for defendant, Daniel Leiby executed a mortgage upon all or nearly all of his property to George, Jacob, and Joseph Leiby, containing the following condition: "Provided, nevertheless, and this deed is on this condition, to-wit: Whereas the said George Leiby, Jacob Leiby, and Joseph Leiby are endorsers and security for the said Daniel Leiby in divers sums of money and debts due and to become due from said Daniel Leiby to divers persons. Now, if the said Daniel Leiby, his heirs and assigns, shall well and truly pay, or caused to be paid, the said debts and sums of money as aforesaid, amounting to about the sum of seven thousand dollars, and shall also pay to Dr. Wampler, John Shafer, Samuel Lucas, Isaac

Gardner, and Aaron Russell, all of Butler county, Ohio, the several sums of money owing by the said Daniel Leiby to them, then these presents shall be void and of no effect, otherwise to be and remain in full force," etc.. This instrument was held to be an assignment for the benefit of all the creditors, as well those not named as those who were. This case is followed in the same court by that of *Dickson v. Rawson*, 5 Id., 218.

In the case of *Page v. Smith*, 24 Wis., 368, also cited by counsel for defendant, Dedolph & Lipke received of Page an advance of $775, and executed to him a bill of sale (in that state ordinarily regarded as a chattel mortgage) of a lot of staves and heading of the value of $2,600, "proceeds of the same when sold to be applied to the payment of the said Thomas Page and other creditors." This instrument was held to be an assignment for the benefit of all the creditors of Dedolph & Lipke, and there being no bond given by Page as required by the assignment law of that state, was held to be void, following the much involved case of *Norton v. Kearney*, 10 Id., 386.

In all of these cases, as in the case at bar, there was a trust created by the instrument itself, not dependent upon garnishment or intervention on the part of the beneficiaries therein named.

It is not deemed necessary, for the purposes of this case, to attempt a construction of our assignment law, further than to call attention to those of its provisions which declare all assignments under it to be void unless made in conformity to it, requiring the sheriff of the county to be the assignee named in every case, and forbidding the giving of a preference of one debt or class of debts over another, except that of laborers' wages to the limited amount therein specified. The instrument involved in the case at bar is inimical to all these provisions, and hence cannot be sustained as a valid assignment. Comp. Stat., Ch. 6.

I come to the conclusion, then, that while a debtor may
37

give a mortgage of a part, possibly of all, of his property, to a creditor to secure his *bona fide* debt, yet if, by the terms of such mortgage, or of a contemporaneous agreement, he seek to create a trust in favor of· any other creditor or person in relation to the mortgaged property, such instrument must be held to be an assignment for the benefit of all of such debtor's creditors, and as such must be held void, if not "made in conformity to the terms" of the act regulating voluntary assignments.

It necessarily follows, therefore, that there was no error in the giving or refusing to give instructions by the district court, nor in directing the verdict as stated in the record.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED

THE other judges concur.