LEVI KAUFMAN ET AL. V. WILLIAM COBURN ET AL.

[FILED NOVEMBER 5, 1890.]

1. **Insolvency: SURETIES: TRANSFER OF PROPERTY TO.** A firm engaged in the mercantile business, being indebted in about the sum of $18,000, for which A, B, and C were separately liable as sureties for about equal portions of said debt, sold their stock of goods, including real estate and other property, to said sureties, who jointly assumed all the debts for which they were severally liable. *Held,* That this was a sale and not an assignment, and if made in good faith would be sustained.

2. ———: ———: **LIABILITY.** The sureties, so far as appears, did not take the property for the benefit of one or more creditors of the debtor other than themselves, but they became absolutely liable for the debts which they had assumed, whether the property received was of sufficient value to pay said debts or not. *Bonns v. Carter,* 20 Neb., 566, distinguished.

ERROR to the district court for Douglas county. Tried below before DOANE, J.

*R. S. Ervin*, and *Balliet, Ervin & Points*, for plaintiffs in error, cited: *Davis v. Scott*, 27 Neb., 642; *Schars v. Barnd*, Id., 94; *Harkrader v. Leiby*, 4 O. St., 602; *Carson v. Byers*, 67 Ia., 606–11; *Lininger v. Raymond*, 12 Neb., 19–25; *Kieth v. Heffelfinger*, Id., 497; *Swilz v. Bruce*, 16 Id., 466; *Whitfield v. Stiles*, 24 N. W. Rep. [Mich.], 119; *Grimes v. Farrington*, 19 Neb., 44; *Deitrich v. Hutchinson*, 20 Id., 52; *Merrill v. Wedgwood*, 41 N. W. Rep., 149; *Sloan v. Coburn*, 26 Neb., 607; *York Bank v. Carter*, 38 Pa. St., 446; *Chase v. Walters*, 28 Ia., 460; *Dart v. Farmers Bank*, 27 Barb. [N. Y.], 337; *Funk v. Staats*, 24 Ill., 632.

*John L. Webster, A. C. Troup, Chas. Ogden, Cavanaugh, Crane & Atwell*, and *W. O. Bartholomew, contra*, cited: *Bonns v. Carter*, 20 Neb., 566; *Wallace v. Wainwright*, 87 Pa. St., 263; *Harkrader v. Leiby*, 4 O. St., 602; *Kerbs v. Ewing*, 22 Fed. Rep., 69 ?; *Freund v. Yuegerman*, 26 Id., 812; *Kellog v. Richardson*, 19 Id., 70; *White v. Cotzhausen*, 129 U. S., 329; *Winner v. Hoyt*, 66 Wis., 227; *Chase v. Walters*, 28 Ia., 460; *McKinnon v. Lumber Co.*, 63 Tex., 31; *Bridge v. Eggleston*, 14 Mass., 250; *Groves v. Steel*, 2 La. Ann., 480; *Chase v. Chase*, 105 Mass., 388; *Landecker v. Houghtaling*, 7 Cal., 392; *McLane v. Johnson*, 43 Vt., 48; *Wyckoff v. Carr*, 8 Mich., 44; *Taylor v. Robinson*, 2 Allen [Mass.], 562; *Dickson v. Rawson*, 5 O. St., 218; *Loudenback v. Foster*, 39 Id., 203; *Grimes v. Grimes*, 6 S. W. Rep. [Ky.], 333; *Willis v. Yates*, 12 Id. [Tex.], 232; *Winner v. Hoyt*, 66 Wis., 227; *Burrows v. Lehndorff*, 8 Ia., 96; *Bank v. Crittenden*, 23 N. W. Rep. [Ia.], 646; *Straw v. Jenks*, 43 Id. [Dak.], 911; *Holt v. Bancroft*, 30 Ala., 193; *Palmour v. Johnson*, 10 S. E. Rep. [Ga.], 500; *Preston v. Spaulding*, 120 Ill., 208; *Martin v. Hausman*, 14 Fed. Rep., 60; *Perry v. Corby*, 21 Id., 737; *Pyle v. Warren*, 2 Neb., 241; *Ransom v. Schmela*, 13 Id., 73; *Jamison v. McNally*, 21 O. St., 295; *Aultman v. Heiney*,

43

59 Ia., 654; *James v. Hetherington*, 45 Id., 681; Wait, Fraudulent Conv. [2d Ed.], sec. 379.

MAXWELL, J.

This is an action of replevin brought in the district court of Douglas county, and as the petition and answer purport to set out the facts as claimed by each party, they are hereby given. The amended petition is as follows:

"The plaintiffs complain of the defendant and allege for cause of action that they are the absolute and unqualified owners of the goods, wares, and merchandise described as follows, to-wit: All the goods, chattels, wares, and merchandise, consisting of the stock of tobacco, pipes, cigar-holders, cigars, fancy articles, cigarettes, including all the stock of goods, chattels, wares, and merchandise contained in the building and place of business No. 207 South Fifteenth street, Omaha, Nebraska, including all the fixtures, show cases, counters, and shelving, and including all the articles, goods, and chattels contained in the basement and storeroom of said building, No. 207 South Fifteenth street. All of the goods, chattels, wares, and merchandise, consisting of tobacco, pipes, canes, cigars, cigar-holders, fancy articles, cigarettes; also all fixtures, including counters, shelving, show cases, and including all articles, goods, and chattels contained in the storeroom and basement in the building, No. 216 South Thirteenth street, Omaha, Nebraska. All of the stock of goods, wares, and merchandise, consisting of tobacco, pipes, fancy articles, cigars, cigar-holders, cigarettes, and cigarette-holders; also the fixtures, including counters, shelving, show cases, including all the goods, chattels, wares, and merchandise contained in the storeroom of No. 1009 Farnam street, Omaha, Nebraska; all the said goods above described being in the city of Omaha, Douglas county, Nebraska.

"Second—Plaintiffs. allege that said goods, wares, and merchandise, above described, are of the value of $10,000.

"Third—That the defendant wrongfully and unlawfully detains said goods, wares, and merchandise from the possession of plaintiffs, and has wrongfully detained the same for ———— days, to the plaintiffs' damage in the sum of $10,000."

Afterwards the Bank of Commerce was admitted as a defendant with Coburn, and they filed a joint answer as follows:

"Now come said defendants and for answer to plaintiff's petition filed herein deny each and every allegation therein contained.

"Second—That on or about the 20th day of February, 1888, David Kaufman and Isaac Kaufman, copartners in trade and doing business in the city of Omaha, Nebraska, under the firm name and style of Kaufman Brothers, were indebted to the said Bank of Commerce in the sum of $6,600 in two causes of action arising upon two certain promissory notes, one for the sum of $3,000 and interest thereon, and the other for $4,000 and interest, on which there was a credit of $400, and on said day the said Bank of Commerce commenced two actions by attachment against the said Kaufman Brothers in the district court in and for Douglas county, and caused an order of attachment to be issued in each of said cases, one for the sum of $3,000 and interest, and the other for $3,600 and interest, and delivered the same to the defendant Wm. Coburn, who was at that. time, and all the time hereinafter mentioned has been and now is the sheriff of said Douglas county, Nebraska; that under and by virtue of said orders and in pursuance of the command thereof the said defendant, Wm. Coburn, sheriff, levied upon the goods, wares, and merchandise, and took the same into his custody; that said goods and chattels were at the time of said levy the goods and chattels of said Kaufman Brothers and were liable to be lev-

ied upon for the satisfaction of said debts and taken under said orders of attachment for the satisfaction of the same.

"Third—That on the 11th day of February, 1888, one Darwin H. Hull commenced an action by attachment against said Kaufman Brothers in the county court of.said Douglas county, and caused an order of attachment for the sum of $367.50 to be issued in said cause and delivered to the defendant William Coburn, sheriff; that under and by virtue of said order, and in pursuance of the command thereof, said defendant Wm. Coburn, sheriff, levied upon the goods above described, subject to the levy of the attachment first above described, and took the same into his custody; that said goods were at the time of said levy the goods and chattels of the said Kaufman Brothers, David Kaufman and Isaac Kaufman, and were liable to be levied upon for the satisfaction of. said last named debt, and taken under said order of attachment for the satisfaction of the same; that afterwards and on the 19th·day of March, 1888, a judgment was rendered in said county court in said case in favor of the plaintiff and against said Kaufman Brothers for the sum of $367.50 and costs in the sum of $6.10.    Since the issuing of said·attachments aforesaid, and, to-wit, on or about the 8th day of January, 1889, there has been paid on the note for $4,000 to the Bank of Commerce, above referred to, the sum of $1,000."

The above amended answer was filed at the close of the trial    The cause having been tried on a general denial, the court instructed the jury as follows:

"This is an action brought by the plaintiffs to recover from the defendant Coburn, as sheriff of this county, the possession of certain goods, wares, and merchandise, to which the plaintiffs claim they were entitled, and which had been taken by the sheriff under orders of attachment sued out of this court in actions commenced by creditors of Kaufman Bros. against them.   The plaintiffs base their right of recovery herein upon the in ruments which have

been introduced in evidence, purporting to be a bill of sale of the property in controversy, to them. You are instructed:

"I. That the written instruments referred to, which were introduced in evidence by the plaintiffs as evidence of their title to the property in controversy, was, in effect, as shown by the testimony, an assignment for the benefit of creditors, and as such is void under our statute, and conveyed no title to the plaintiffs in this action as against other creditors. It is your duty, therefore, to return a verdict for the defendants, and I hand you a verdict, which you will sign by your foreman and return the same into court."

The jury returned a verdict as follows:

"We, the jury duly impaneled and sworn to try the issue joined between the said parties, do find for the said defendants, and do find that defendants had a special interest in and were entitled to the possession of the property at the time of the commencement of this suit, and we find the interest of the Bank of Commerce to be $5,055, and of Wm. Coburn, sheriff, $909.83; total, $5,964.83."

A motion for a new trial was thereupon filed, one of the grounds of which was that the damages were excessive; the bank thereupon remitted from the verdict the sum of $205, whereupon the motion for a new trial was overruled and judgment entered on the verdict.

The testimony tends to show that prior to the 8th day of February, 1888, David Kaufman and Isaac Kaufman were engaged in business in the city of Omaha under the name of "Kaufman Bros." It also appears that they were largely indebted, and that Edgar P. Davis, Samuel Rees, and Levi Kaufman had each become security for Kaufman Bros. in a very large amount. These parties, to save themselves from loss, claimed to have purchased the stock of goods and other property of Kaufman Bros., who thereupon executed the following instruments:

"This agreement, made and entered into this 8th day of

February, A. D. 1888, by and between Kaufman Bros., consisting of David Kaufman and Isaac Kaufman, of the first part, and Levi Kaufman, Edgar P. Davis, and Samuel Rees, parties of the second part, witnesseth:

"That the said Kaufman Bros., David and Isaac Kaufman as aforesaid, are to transfer, sell, and set over unto Levi Kaufman, Edgar P. Davis, and Samuel Rees all of our personal property, consisting of all of the stock of goods, wares and merchandise, chattels of every kind and nature contained in the three storerooms and basements of the store buildings No. 207 South Fifteenth street, No. 216 South Thirteenth street, and 1009 Farnam street, Omaha, Nebraska, also all of our real estate situated in Douglas county and Sarpy county, Nebraska, and Monona county, Iowa, except the homestead of David Kaufman, said real estate being in the name of David Kaufman.

"In consideration and in full payment of the indebtedness due from us, the said Kaufman Bros., to the said Levi Kaufman, Edgar P. Davis, and Samuel Rees, of $3,000 cash in hand, the receipt whereof is hereby acknowledged, and we, the said Levi Kaufman, Edgar P. Davis, and Samuel Rees, do hereby bind ourselves, our heirs, executors, and administrators, to hold the said Kaufman Bros. harmless from all liability on notes which we have either indorsed for them, or signed with them, or put up collateral security for, and of which we, before the execution of this agreement, guaranteed the payment.

"Witness our hands this 8th day of February, A. D. 1888.

KAUFMAN BROS.,

"By DAVID KAUFMAN.

"DAVID KAUFMAN.

"ISAAC KAUFMAN.

"EDGAR P. DAVIS.

"SAMUEL REES,

"By E. P. DAVIS.

"LEVI KAUFMAN,

"By R. S. ERVIN.

"We, Levi Kaufman and Samuel Rees, hereby accept, affirm, and ratify the above and foregoing agreement.

"SAMUEL REES.

"LEVI KAUFMAN.

"This indenture made this 8th day of February, A. D. 1888, between Kaufman Bros., consisting of David Kaufman and Isaac Kaufman, doing business under the firm name of Kaufman Bros., of Douglas county, Nebraska, parties of the first part, and Levi Kaufman, Edgar P. Davis, and Samuel Rees, of the second part, witnesseth:

"That the said parties of the first part, in consideration of the sum of $20,000, in hand paid by the parties of the second part, have bargained and sold, and by these presents do grant and convey unto the parties of the second part, their executors, administrators, and assigns, the following described goods and chattels, to-wit, the said personal property hereby sold as aforesaid being now owned, kept, and used by the parties of the first part at the buildings and places of business known as Kaufman Bros.' cigar store, and located at Nos. 207 South Fifteenth street, 216 South Thirteenth street, and 1009 Farnam street, in the city of Omaha, Nebraska, and consisting of all and singular the personal property of the party of the first part now in and belonging to said places of business respectively, and consisting principally of

"First—All the goods, chattels, wares, and merchandise, consisting of the stock of tobacco, pipes, cigar-holders, fancy articles, cigars, cigarettes, and all of the stock of goods, chattels, wares, and merchandise owned by us and kept by us in the building and place of business No. 207 South Fifteenth street, Omaha, Nebraska; also all the fixtures, show cases, counters, shelving, including all articles, goods, and chattels owned by us and used in running the business and contained in the store and basement No. 207 South Thirteenth street.

"Second—All the stock of goods, chattels, wares, and merchandise, consisting of tobacco, pipes, cigar-holders,

fancy articles, cigars, cigarettes; also all fixtures, including counters, shelving, show cases, including all articles, goods, and chattels owned by us and contained in the storerooms and basement No. 216 South Thirteenth street, Omaha, Nebraska.

"Third—All of the stock of goods, wares, merchandise, consisting of tobacco, pipes, fancy articles, cigars, cigarettes, cigar-holders; also the fixtures, including counters, shelving, show cases, including all the goods and chattels owned by us and kept in the storerooms No. 1009 Farnam street, Omaha, Nebraska.

"The intention being to sell and convey to the said Levi Kaufman, Edgar P. Davis, and Samuel Rees all of our personal property of every kind and nature in the premises hereinbefore described.

"Fourth—All the interest of the said parties of the first part as seised in the premises above described, to-wit: No. 207 South Fifteenth street, No. 216 South Thirteenth street, Omaha, Nebraska, and No. 1009 Farnam street, Omaha, Nebraska, and all of the estate, title, and interest of the said parties of the first part in and to said premises.

"The condition of the above sale is such, that whereas, the said Levi Kaufman stands and is security for $6,000 on the notes of the said Kaufman Bros., due the Bank of Commerce, also one note of $1,500 and a note of $500 to U. S. National Bank, all drawing interest at the rate of ten per cent—the date when said notes were given and the date upon which they fall due cannot now be given by the parties of the first part, and also cash loaned the said Kaufman Bros. in the sum of $300 by the said Levi Kaufman; and

"Whereas, the said Edgar P. Davis indorsed and stands security for the said Kaufman Bros. for two notes for the sum of $750 each, one note for $1,074.62, also three notes, $2,100, $1,000, $1,000 respectively, and cash loaned in the sum of $250, for which the said Davis stands security and indorsed for the said Kaufman Bros.; and

"Whereas, the said Samuel Rees stands security and indorsed notes for the said Kaufman Bros. as follows, to-wit: one note for $2,100; two notes, one for $1,247 and one for $1,000; also the said Rees has loaned Kaufman Bros. cash in the sum of $666:

"Now, whereas, the said Kaufman Bros. have failed to pay said notes and cannot meet the payment of said notes, now, therefore, the said Kaufman Bros. do hereby sell and transfer the above described property to the second parties herein for the payment of said notes and indebtedness of the said Kaufman Bros. to the said Levi Kaufman, Edgar P. Davis, and Samuel Rees:

"It is expressly agreed that the said second parties may take possession of said goods, chattels, and wares and merchandise, and their possession is their authority.

"In witness whereof, we have hereunto set our hands and seals this 8th day of February, A. D. 1888.

"KAUFMAN BROS.

"By DAVID KAUFMAN.

"DAVID KAUFMAN.

"ISAAC KAUFMAN.

"Witness: R. S. ERVIN."

"STATE OF NEBRASKA,  } ss.
    DOUGLAS COUNTY.  }

"Be it remembered that on this 9th day of February, A. D. 1888, before me, G. H. Payne, a notary public in and for said county, personally came David Kaufman and Isaac Kaufman, and to me known to be the identical persons described in and who executed the above and foregoing instrument as grantors, and acknowledged said instrument to be the voluntary act and deed of Kaufman Bros., and to be their voluntary act and deed.

"Witness my hand and seal this 9th day of February, A. D. 1888. ·

[SEAL.]                    G. H. PAYNE,

"A Notary Public in and for Douglas County, Neb."

The debts owing by Kaufman Bros., for which these parties were security, so far as appears, were *bona fide*, and the plaintiffs in error agreed to assume the same upon the consideration that they were to receive the property described in the foregoing agreement. It is not a case of a trust where the parties agreed to sell the property and pay the debts; but they assumed the debts for which they were security. They did not receive the property for the benefit of one or more of the creditors of Kaufman Bros. other than themselves but personally assumed the burden. In all probability they saw that Kaufman Bros. would be unable to pay the debts for which they were security unless an arrangement of that kind was made, and hence that they would be called upon each for himself to pay the debts for which he was security. There is testimony in the record tending to show that Kaufman Bros. were popular salesmen, and that after the transfer of the places of business to the plaintiffs in error the business fell off considerably, and in order to retain the business the plaintiffs again employed the Kaufman Bros. as salesmen. Whether or not this testimony is true is a question for the jury, but if true it would afford a satisfactory reason for the retention of the Kaufman Bros. to assist in conducting the business.

The stock is shown to have been worth about $12,000, and the real estate and other property conveyed less than $8,000—probably not to exceed $6,000, so that if that testimony is true the property conveyed was not in excess of the amount of the consideration. The obligations assumed evidently were not before the parties when the bill of sale and contract were drawn and the debts assumed probably are only estimated as to amounts and dates. A mistake in this regard, however, whereby the consideration would be less than stated, is a matter of defense.

The case differs materially from that of *Bonns v. Carter*, 20 Neb., 566, where a transfer was made to a creditor for

the payment of creditors other than himself, and the transfer was held to be in trust and fraudulent as to creditors. The court erred in the instruction given to the jury, as the questions of fact should have been submitted to them.

The judgment of the district court is therefore reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.