LANDAUER, KAIM & STRENG v. G. H. M CK &
COMPANY.

FILED JANUARY 16, 1894. NO. 4872.

1. **Fraudulent Conveyances:** CHATTEL MORTGAGES: BURDEN
   OF PROOF: ATTACHMENT. Where a creditor causes an attach-
   ment to be levied upon a stock of goods in the possession of the
   agent of certain mortgagees, the burden of proof is upon such
   creditor, on a motion to discharge the attachment, to show that
   the mortgages were made for the purpose of hindering, delay-
   ing, or defrauding creditors.

2. ———. The principles laid down in the first, third, and fifth par-
   agraphs of the syllabus in *Jones v. Loree*, 37 Neb., 816, approved,
   applied, and followed.

ERROR from the district court of Douglas county. Tried
below before DOANE, J.

The opinion contains a statement of the case.

*Charles Offutt,* for plaintiffs in error:

All transactions between husband and wife are presumed to be fraudulent, and the burden is upon the wife to show by the clear and indisputable preponderance of the evidence the consideration for the claim which she makes against the estate of her husband when such claim is made as against the rights of creditors. (*Aultman v. Obermeyer,* 6 Neb., 265; *First Nat. Bank of Davenport v. Baker,* 57 Ia., 196.)

Mack had no right to make the claims of some creditors due in advance of the time agreed upon by the creditors, to the prejudice of those whose claims were due. (*Morse v. Steinrod,* 29 Neb., 108; *Brown v. Work,* 30 Neb., 800; *Smith v. Boyer,* 29 Neb., 76.)

A mortgage or deed to a *bona fide* creditor to secure the mortgagor's property against attachment by other creditors is made with intent to cheat, hinder, and delay, and is prohibited by law. (*Johnson v. Steele,* 23 Neb., 83; *Crowninshield v. Kittridge,* 48 Mass., 522; *Johnson v. Whitwell,* 24 Mass., 73; *Harris v. Sumner,* 19 Mass., 136; *Burlingame v. Bell,* 16 Mass., 324.)

When a debtor in failing circumstances executes a mortgage upon all of his property, and transfers thereby to the mortgagee property exceeding in value a sum sufficient to pay the mortgagee, the mortgage is fraudulent as to creditors. (*Morse v. Steinrod,* 29 Neb., 108; *Smith v. Boyer,* 29 Neb., 76; *Brown v. Work,* 30 Neb., 800; *Thompson v. Richardson Drug Co.,* 33 Neb., 715; *McCord v. Weil,* 33 Neb., 868.)

An assignment for the benefit of creditors may be made without following the form prescribed by statute. The transaction operated as, and was in legal effect, an assignment for the benefit of creditors. (*Bonns v. Carter,* 22 Neb., 518; *Morse v. Steinrod,* 29 Neb., 109; *Hershiser v. Higman,* 31 Neb., 531; *Preston v. Spalding,* 10 N. E. Rep.

[Ill.], 903; *Richmond v. Mississippi Mills*, 11 S. W. Rep.
[Ark.], 960; *Appeal of Miners Nat. Bank of Pottsville*, 57
Pa. St., 193; *Brashear v. West*, 7 Pet. [U. S.], 608; *Brown
v. Minturn*, 2 Gallison [U. S.], 557; *Winner v. Hoyt*, 66
Wis., 234; *Norton v. Kearney*, 10 Wis., 443\*; *Gillmann
v. Henry*, 53 Wis., 468; *Herbst v. Lowe*, 65 Wis., 316;
*Backhaus v. Sleeper*, 66 Wis., 68; *Berry v. Cutts*, 42 Me.,
445; *Burrows v. Lehndorff*, 8 Ia., 103; *Van Patten v. Burr*,
52 Ia., 518; *Wilson v. Richards*, 1 Neb., 343; *Omaha
Book Co. v. Sutherland*, 10 Neb., 335; *McHugh v. Smiley*,
17 Neb., 629; *Rockwell v. Humphrey*, 57 Wis., 414;
*White v. Cotzhausen*, 129 U. S., 329.)

*Bartlett, Crane & Baldrige* and *E. R. Duffie, contra:*

Mack had the legal right to execute the mortgages, and
there was no fraud in so doing. (*Lininger v. Raymond*,
12 Neb., 19; *Grimes v. Farrington*, 19 Neb., 48; *Nelson
v. Garey*, 15 Neb., 531; *Bierbower v. Polk*, 17 Neb., 268;
*Feder v. Solomon*, 26 Neb., 266; *Morrow v. Reed*, 30 Wis.,
81; *Janvrin v. Fogg*, 49 N. H., 340; *Nash v. Norment*, 5
Mo. App., 545; *Seidentopf v. Annabil*, 6 Neb., 524; *People v. McAllister*, 19 Mich., 215; *Wyman v. Wilmarth*, 46
N. W. Rep. [S. Dak.], 190; *Britton v. Boyer*, 27 Neb.,
522; *Davis v. Scott*, 27 Neb., 642.)

RYAN, C.

The questions arising in this case are solely incident to
an attachment which issued out of the district court of
Douglas county against the defendants G. H. Mack & Co.,
in a certain cause pending in that court, wherein Landauer,
Kaim & Streng were plaintiffs. This attachment was levied
upon a stock of merchandise which had previously, to-wit,
on February 15, 1890, been mortgaged to the several
parties hereinafter named, for the security of the payment
of the amounts designated as owing to each, to-wit: To
the First National Bank of Omaha, $6,908.16; to Eliza-

beth Mack, wife of G. H. Mack, to secure the payment of $5,939.16; to Sebastian Trottner, to secure the payment of $2,160; to Calixto Lopaz & Co., to secure the sum of $1,290.28; to the firm of G. H. Mack & Co., of Cleveland, Ohio (the individual members of which were S. Trottner and H. Lichtenberg of Cleveland, Ohio), to secure payment of the sum of $2,912.56; to D. M. Steele & Co., to secure the payment of $1,200; to Yokum Brothers, of Reading, Pa., to secure the payment of $1,446.60; to Alvin Mc-Leod, of Omaha, Nebraska, to secure the payment of $200; to Meyer & Raapke, of Omaha, Nebraska, to secure payment of $200. Subsequently to February 15, other mortgages, chattel and real, were given by the firm of G. H. Mack & Co., until the number of all was, in the aggregate, sixty. These mortgages, without question, covered all the property owned by the firm of G. H. Mack & Co., of Omaha, at the time the several mortgages were made. Anterior to the 15th day of February it is claimed, and for the purposes of this case it may be conceded, that G. H. Mack, a member of the firm of G. H. Mack & Co., withdrew from the assets of said firm such amounts of money as were out of proportion to his proper individual expenses, for which purpose he testified that the same were withdrawn.

From the testimony it is quite clear that the aggregate amount of the mortgages given on the 15th day of February, 1890, equaled or exceeded the value of the real and personal property mortgaged. It is an established fact upon the evidence that several of the mortgages given on February 15 were given to relatives of G. H. Mack. It is also true that the mortgages to Van Slyke and McLeod were given in excess of the amounts due each of these last two named parties, who were, at the time, employes of the firm of G. H. Mack & Co. These mortgages, given for more than the amounts actually due, seem to have been so given rather from mistake, or want of means of fixing the

amount, than from any intention of giving any undue preference to the mortgagees named respectively.

It is insisted in argument that the fact that many of the mortgages given were to secure payment of sums not due at the date of the mortgages was evidence of bad faith on the part of the mortgagor and mortgagee. We should be loth to infer, as a necessary result from these premises, that such mortgages were fraudulent or invalid, or even that the fact that a mortgage was given for a debt not yet due was evidence of bad faith. Probably, as a matter of fact, mortgages are given oftener to secure sums not due than to secure the payment of claims which have already fully matured.

In respect to the fact that some of these mortgages were given to relatives of G. H. Mack, it is proper to observe that the testimony shows fully and clearly, so as to leave no ground for suspicion, that each relative who received a mortgage only received it for an amount which was actually due and for an indebtedness that was *bona fide* in all respects. Even had there been a mere question of fact in issue, there was as to this proposition testimony sufficient to sustain this affirmative finding of the court, and such finding would not, therefore, be disturbed. It is not necessary to resort to a mere presumption in favor of the correctness of the finding of fact in respect of this matter, for, upon an examination of all the testimony, we are satisfied that, as an original question, the weight of the evidence was with the finding made by the court, perhaps not expressly made, but such as must have incidentally been found to sustain the result reached. In a case like that at bar, where the mortgages have been made and recorded as required by law, and where the mortgagees have taken actual possession, which they are maintaining at the time of the levy of the attachment by a common agent of such mortgagees, the burden of proof devolves upon the attaching creditor to show that the mortgages were made for the purpose of

hindering, delaying, or defrauding creditors, a requirement not met by the proofs in this case. If one of the mortgages is *bona fide* and valid, and possession is held under such mortgage, no attachment could countervail the possession so held. If this was an action of replevin, it would be sufficient to show that the party in possession was in possession under one valid mortgage; and possession so held by the agent of a mortgagee must, as against one who undertakes to disturb that possession, prevail unless the attaching creditor shows that all the mortgages under which possession is held by the agent are invalid.

A full examination of all the pleadings and evidence, upon which the motion to dissolve the attachment was heard, convinces us that the district court was right in sustaining the motion to dissolve the attachment, under the rules laid down in the case of *Jones v. Loree*, 37 Neb., 816, thus stated in the syllabus of said case:

"1. Where several chattel mortgages are executed simultaneously for the purpose of securing debts owing by the mortgagor to the mortgagees, the aggregate of such indebtedness not being unreasonably less than the value of the property mortgaged, such mortgages will not be held void merely because no one of such debts is in itself sufficient to justify so great a security."

"5. An intention to defraud cannot be inferred merely from the fact that a preference was given to a certain creditor."

The argument of plaintiffs in error seems to be based largely upon the theory that the several mortgages in fact constituted an assignment by the firm of G. H. Mack & Co. contrary to the terms of the assignment law of this state. It is true that in *Bonns v. Carter*, 20 Neb., 566, language was employed by a portion of this court which would seem to justify this contention of the plaintiffs in error. It is quite clear that the provisions of the assignment law should not be made to operate more

broadly than its terms express; in other words, its opera-
tion should not be extended by implication. The assign-
ment law prohibited assignments made in any other man-
ner than that fixed by its terms, but did not undertake to
abrogate the provisions of section 20, chapter 32, Compiled
Statutes of Nebraska. The language of this section is as
follows: "The question of fraudulent intent in all cases
arising under the provisions of this chapter, shall be
deemed a question of fact and not of law," etc. The repeal
of a statute by implication is not favored, and certainly the
force given the assignment law by a portion of this court
in *Bonns v. Carter, supra,* necessarily has this operation.
Whether an assignment is made in conformity with the
provisions of the assignment law, may be properly a ques-
tion for the court to determine upon its construction of the
instrument or instruments creating the assignment. It
nevertheless remains true, that whether mortgages or con-
veyances are fraudulent, is a question of fact to be deter-
mined by the jury, or, in cases tried like the one at bar,
by the court, solely upon the weight of the evidence ad-
duced. Such questions are questions of fact involving
largely the intention of the parties to the transaction, and
should not be determined as questions of law arising under
the assignment act. The ruling of the district court was
correct, and its judgment is

AFFIRMED.