## S. N. Taylor, Sheriff of Hall County, Nebraska, v. Harle-Haas Drug Company.

### Filed July 3, 1903. No. 12,953.

1. **Replevin:** Pleading. An allegation of possession under a chattel mortgage, by agreement with the mortgagor, renders unnecessary any allegation of demand of payment of demand notes secured by the mortgage, in order to show the mortgagee's right of possession.

2. **Chattel Mortgage:** Fraud. The open and admitted inclusion of a small claim on behalf of another creditor, in a chattel mortgage given to secure *bona fide* indebtedness, will not, of itself, render such mortgage and possession fraudulent and unlawful as against attaching creditors.

3. **Evidence.** Evidence *held* to support finding, that the drug company was in actual possession under its mortgage, when the attachments were levied.

Error to the district court for Hall county: James N. Paul, District Judge. *Affirmed.*

*Harrison & Pearne,* for plaintiff in error.

*Fred W. Ashton, A. C. Mayer* and *Willard A. Prince, contra.*

Hastings, C.

This action was a replevin suit brought by the drug company, plaintiff below, claiming as mortgagee in possession, to recover a quantity of drugs, which the sheriff had taken under attachment against one D. E. Wilcox. On June 21, Wilcox, who had a drug store in Wood River, gave a chattel mortgage to the drug company to secure the payment of two notes, one for $368.60, representing an amount due from Wilcox to the drug company, one for $15.75 drawn in favor of the drug company, but in reality in settlement of an account of the Nebraska Mercantile Company; these two claims were presented at the same time and by the same attorney; and the chattel mortgage was given to secure both of them in the drug company's name. The at-

torney then, ostensibly, put in possession the witness D. D. O'Kane on behalf of the mortgagee and so left the matter, with the agreement that O'Kane was to hold possession and no proceedings in foreclosure were to be instituted for ten days, by which time Wilcox claimed he could get aid to liquidate the amounts due under the mortgage. The notes were payable on demand. The drug company's attorney, Mr. Ashton, says that he made demand at once, took possession and delivered such possession with Wilcox's assent to O'Kane; that Wilcox objected to O'Kane's not being a registered pharmacist, and it was finally agreed that O'Kane should have possession and control, but that Wilcox should remain in attendance, as pharmacist. June 27, the sheriff levied two writs of attachment, one for E. E. Bruce & Company and the other for Jerry Bowen, or Jerry Bowen & Company, on the goods in question. Almost immediately, Wilcox seems to have filed a petition in voluntary bankruptcy, and, on July 10, he was adjudged a bankrupt, and sometime in August the goods which had been levied upon and were still retained by the sheriff, were set off to him, as exempt. In a day or two after such allowance of exemptions by the trustee in bankruptcy, the drug company replevied the goods from the sheriff in the county court of Hall county. A trial was had in that court, and a finding entered for the plaintiff. An appeal was taken; another trial had in the district court, resulting in another judgment for the plaintiff, rendered after a trial to the court, a jury being waived. From that judgment the sheriff brings error, and urges in brief and argument that the plaintiff's petition and affidavit failed to disclose a cause of action, because plaintiff's claim of ownership was by a chattel mortgage to secure notes payable on demand, and neither petition nor affidavit contained any allegation that demand had been made, and, therefore, it is claimed that the notes were not due. The petition and affidavit both allege that the notes were due, and also allege that the property had been by the plaintiff reduced to possession, by agreement with Wilcox.

It seems clear that; even if the allegation that the notes were past due should be treated as a legal conclusion, the allegations that the property had been reduced to possession by the plaintiff, and that it was in plaintiff's possession at the time the officer levied upon it, would cure any question as to plaintiff's right of possession, because the mortgage had not matured. The only objection made to the sufficiency of the petition in this case is after the judgment. It does not appear to have been made at the trial in any way whatever, and defendant's pleading was a general denial. Under such circumstances, it would seem that the allegation that the notes were past due and unpaid should be held sufficient. If defendant desired an express allegation as to demand, it should have complained by way of motion.

It is also complained, that the chattel mortgage was given to secure the payment of two distinct debts due to different parties, but the notes, like the mortgage itself, were in favor only of the plaintiff. It is claimed that this constituted a secret trust in favor of the undisclosed creditor, the Nebraska Mercantile Company, and rendered the mortgage void, under the ruling announced in *Stewart v. Stewart,* 36 Neb. 558. The rule there announced does not seem to us applicable to the present case. In that case the trusteeship of the German bank was denied, and an endeavor made to claim that the whole indebtedness represented by the mortgage was the bank's. The evidence was not held sufficient to sustain any such contention, and the mortgage was held fraudulent. The main ground for annulling the mortgage in the *Stewart* case, was the since discredited doctrine of *Bonns v. Carter,* 20 Neb. 566, that such mortgages are against the policy of the state assignment law. In the present case, no claim was ever made by the drug company to own the $15.75 note, taken in its name by its attorney. We can not see anything in the transaction fraudulent or in violation of the rights of other creditors.

The real question in the case seems to be, as to the act-

uality of the possession claimed by· the drug company, through its attorney, Ashton, and through O'Kane. Ashton and O'Kane both swear that full possession and control of these premises were given to them, to be held on behalf of the drug company. It appears from the sheriff's statement that, when he went to levy his attachments, he found both O'Kane and Wilcox in possession, the former claiming to have entire control, and supported in this claim by Wilcox. There is some testimony tending to show that Wilcox, during the few days intervening between the mortgage and the levy, sold some cigars from the stock and placed the money in his pocket. There also appears an arrangement between Wilcox, O'Kane and a wholesale grocer, named Porter, by which the latter was permitted to take out of the stock thirteen or fourteen boxes of unopened cigars, which he himself had sold to Wilcox and for which he had not been paid. The cigars in the stock were included in the mortgage. It seems that it was agreed, when O'Kane was ostensibly put in possession, that Wilcox should pay his wages. After Wilcox had filed his petition in bankruptcy, O'Kane filed a claim for care of the stock during these few days before the levy, and it was allowed and paid; but that O'Kane was acting on behalf of the drug company in such possession and control as he actually had, is clear from the testimony of all the parties.

There is evidence, by the attorney for the levying creditors, that on the day before the levy he visited the drug store; found Wilcox alone in possession and behind the counter; saw him sell five cents' worth of sulphur and put the money in his pocket. But, as before stated, it is clear that, at the time the levy was made, Mr. O'Kane was present, and both he and Wilcox were claiming that he held possession on behalf of the drug company. It is clear that the drug company was simply trying to collect a *bona fide* claim. There is nothing to indicate that it or its attorney was in any way attempting to assist Wilcox in any concealment of his property. There was no attempt at concealment of the fact that the $15.75 note belonged to the

Nebraska Mercantile Company, in reality; and we are not prepared to say that the trial court's finding, that the weight of evidence indicated that O'Kane was in actual possession of the stock and entitled to hold it for the drug company under the mortgage against these attachments, is contrary to the weight of evidence.

It is recommended that the judgment of the district court be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.